UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas D. OTTERSBURG,
Defendant–Appellant.

No. 95–1847.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1996.

Decided Feb. 2, 1996.*

Hilary W. Frooman (argued), Office of the United States Attorney, Urbana Division, Urbana, IL, for Plaintiff–Appellee.

Denis McGrady, Jr. (argued), McGrady & McGrady, Gillespie, IL, for Defendant–Appellant.

Before CUMMINGS, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Following a jury trial, Mr. Ottersburg was convicted of two counts of executing a scheme to defraud by transporting property in interstate commerce, 18 U.S.C. § 2314, and one count of defrauding a financial institution, 18 U.S.C. § 1005. His appeal asserts that the district court committed reversible error when it failed to dismiss two alternate jurors and permitted them to deliberate with the jury. For the reasons set forth in the following opinion, we reverse Mr. Ottersburg's convictions and remand for proceedings consistent with this opinion.

* This opinion was released initially in typescript form.

# I

## BACKGROUND

Mr. Ottersburg owned and operated a Ford dealership in Staunton, Illinois. Counts I and II of the indictment against him charged that he leased cars from Ford at out-of-state auctions, transported them back to Illinois, and sold them as if he were the proper owner of the cars. The third count of the indictment alleged that Mr. Ottersburg defrauded the First National Bank of Staunton by receiving loans from the bank, using cars in his inventory as collateral, and then failing to pay off the bank when he sold the cars. The fourth count of the indictment charged that Mr. Ottersburg secured a loan from the bank by pledging, as collateral, a vehicle of which he had only temporary possession.

Following closing arguments, the judge instructed the twelve-person jury and the alternates. When the jury was sent to retire, the court did not dismiss the two alternates, but rather permitted them to retire with the jury to deliberate. The deliberations lasted over nine hours. When the jury returned with its verdict, it became apparent that the alternates had not signed the verdict forms. The court noted that although "the two alternates went back with the jury and deliberated along with the rest of the members of this jury," only the twelve jurors had signed the verdict forms. Tr. 665. It then instructed the fourteen to return to the jury room so that the alternates could also sign the verdict forms. The jury left the courtroom and returned momentarily with fourteen signatures on the verdict forms. When asked, the jury's foreman confirmed that the verdicts were the verdicts of the entire jury, "including the alternates." Tr. 667. The alternates were polled, along with the jury, and they acknowledged the verdict as their own. Mr. Ottersburg never objected to the alternates' participation during the jury's deliberations.

The jury and the alternates acquitted Mr. Ottersburg of Count III, but convicted him of the remaining charges. He was sentenced to thirty months' imprisonment.

# II

## DISCUSSION

Mr. Ottersburg asserts that the district court, by permitting the two alternate jurors to retire along with the jury, violated Rule 24(c) of the Federal Rules of Criminal Procedure. That rule provides, in part, that "[a]n alternate juror who does not replace a regular juror *shall be discharged* after the jury retires to consider its verdict." Fed. R.Crim.P. 24(c) (emphasis added).

Our consideration of this question is controlled by the Supreme Court's analysis in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In *Olano*, two alternate jurors were permitted to retire with the jury and, although they were cautioned not to participate in the jury's discussions, they were present throughout the jury's deliberations. Because the defendant in that case had failed to object to the presence of the alternates, the Court considered the matter under the "plain error" standard of Rule 52(b).[1] The Court set forth a framework for determining when errors may be corrected even though they were not brought to the attention of the district court by the defendant.

Under the Court's analysis, the first prerequisite under Rule 52(b) is that there must be an "error." The Court pointed out that "deviation from a legal rule is 'error' unless the rule has been waived." *Olano*, 507 U.S. at 732–33, 113 S.Ct. at 1777. Waiver, however, differs from forfeiture; "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). If the application of a rule is waived, the defendant may not subsequently challenge the court's action. However, merely forfeiting an error—by failing to object to it—does not erase the presence of the error under Rule 52(b). *Id.* In the case before us, there is no evidence that Mr. Ottersburg

---

1. That rule provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b).

agreed to the participation of the two alternates during the jury's deliberations. Therefore, the district court's failure to dismiss the two alternate jurors was "error," despite Mr. Ottersburg's failure to object.

If an error exists, the next question is whether that error is "plain," meaning that the error is "clear under current law." *Id.* In this case, the failure to dismiss the two alternate jurors was a clear violation of the dictates of Rule 24(c).

The third limitation of Rule 52(b) is that the plain error must "affect substantial rights." In most cases, as *Olano* makes clear, this requirement means that the error must result in prejudice to the defendant. The defendant bears the burden of persuasion on this issue. *Id.* 507 U.S. at 734–36, 113 S.Ct. at 1778.

▆▆▆ If all three of the requirements of Rule 52(b) are satisfied, then the court of appeals has the authority to correct the error, but need not exercise that authority. Rather, the decision to correct "plain error" lies within the appellate court's discretion.[2] *Olano* holds that the exercise of that discretion is governed by the standard set forth in *United States v. Atkinson,* 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936). Under that standard, plain error should be corrected if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779 (quoting *Atkinson,* 297 U.S. at 160, 56 S.Ct. at 392). With this framework in mind, we now consider: (1) whether the plain error present in Mr. Ottersburg's trial "affected his substantial rights" and, if so, (2) whether the error is one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

In *Olano,* the court wrote, "[t]he presence of alternate jurors during jury deliberations is not the kind of error that 'affect[s] substantial rights' independent of its prejudicial impact." *Id.* Therefore, *Olano* requires that we assess whether the presence of the two alternate jurors throughout the delibera-

tions of the jury prejudiced the defendant either "specifically or presumptively." *Id.* 507 U.S. at 739, 113 S.Ct. at 1780. In *Olano,* the Justices noted that the presence of alternate jurors during the jury deliberations might prejudice the defendant in two different ways: "either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors." *Id.* In *Olano,* the alternates had been affirmatively instructed by the court not to participate in the deliberations. The Supreme Court therefore held that it was error for the court of appeals to suppose that the jurors had not followed those instructions because it is the " 'almost invariable assumption of the law that the jurors follow their instructions.' " *Id.* (quoting *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987)).

▆▆▆ Because this case, like *Olano,* is governed by the plain error standard, it is the obligation of the defendant to demonstrate that the deviation from the requirements of Rule 24(c) was prejudicial. *Id.* 507 U.S. at 740–41, 113 S.Ct. at 1781. In important respects, nevertheless, the two cases differ. The record in this appeal affirmatively demonstrates that the alternate jurors were given no special instructions as to their limited role before they retired with the members of the jury to deliberate on the verdict. After nine and a half hours of deliberation, the alternates emerged from the jury deliberations with the jury. When the court realized that there were only twelve signatures on the verdict form, it affirmatively declared in open court that the alternates had deliberated along with the rest of the jury and asked the entire jury to retire with the alternates to allow the alternates to sign the forms "if the alternates agree with these verdicts." Tr. 665. The jury and alternates then retired with all the verdict forms. During the jury's brief absence, the court announced that the "jury has left the courtroom for a redeliberation." Tr. 665–66. After the jury's verdict

---

2. The permissive language of Rule 52(b)—that error "may be noticed"—reveals its discretionary nature.

was announced, the jury, including the alternates, was polled and each juror and alternate affirmed that the form contained his or her verdict.

If, as the Supreme Court directed in *Olano*, we are to presume that the jurors and the alternates followed the instructions of the court, we must conclude that the jurors and the alternates deliberated as a body and, as the court required of them, delivered a unanimous verdict. It is clear, then, that the twelve jurors permitted to decide the fate of Mr. Ottersburg had substantive communications during their deliberations with persons, the alternates, who were not supposed to participate in those deliberations. To reach a contrary conclusion, we would be required to presume that the alternates did not follow the court's instructions and, for nine and a half hours of deliberations, sat mute in the jury room.[3]

Although *Olano* indicates that the substantive participation of the alternates, once established, is sufficient to establish prejudice, we hasten to add that, in this case, other factors also compel the conclusion that the jury's verdict cannot be relied upon. The length of the jury's deliberations makes clear that this case was not an easy one for those called to serve as finders of fact. The jury did not find the defendant guilty of all charges, and at least one of the charges upon which he was convicted presented a relatively close issue of proof.

As we have noted earlier, Rule 52(b) is permissive, not mandatory. *Olano*, 507 U.S. at 736–37, 113 S.Ct. at 1779. We should correct a plain forfeited error affecting substantial rights if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Atkinson*, 297 U.S. at 160, 56 S.Ct. at 392). The criminal conviction before us is based on the verdict of a jury composed of more than the number permitted by Rule 24(c). The record affirmatively shows that, by direction of the district court, the alternate jurors acted as

full members of the jury throughout the nine and a half hours of deliberations. The verdict rendered and the difficulty of proof obviate any lingering doubt that allowing this verdict to stand would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.*

### Conclusion

The judgment of the district court is reversed. The case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED

---

3. If this information were not present on the face of the record, a hearing pursuant to *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), might well be indicated. It is, of course, well-established that, once illicit contact with a juror on a substantive matter under

the jury's consideration is established, we cannot probe further into the mental processes of the jury to determine the effect of that illicit substantive contact. Fed.R.Evid. 606(b); *United States v. Sanders*, 962 F.2d 660, 673 (7th Cir.1992).