**Kenneth R. TAYLOR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–9611–CR–473.**

Court of Appeals of Indiana.

Nov. 24, 1997.

Janet S. Dowling, Evans, Dowling & Youngcourt, P.C., Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Katherine L. Modesitt, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Kenneth Taylor was convicted of burglary, a Class B felony, and theft, a Class D felony, following a trial by jury. Taylor now appeals his convictions and raises the following issues:

1. Whether the trial court committed fundamental error by permitting the alternate juror to retire to the jury room during deliberations without first giving an instruction that the alternate juror was not to participate in the deliberations or communicate with the other jurors regarding deliberations unless and until it became necessary for him to replace one of the jurors?; and

2. Whether the trial court erred in failing to exclude testimonial and written hearsay evidence, where the out-of-court declarant failed to appear for trial and was not subject to cross-examination?

We affirm.

### *FACTS*

At approximately 2:00 p.m. on December 31, 1995, Anthony West and Kathleen Hoff left their apartment and did not return until approximately 1:00 p.m. the following day. When they returned home, they found that their patio screen had been removed and that the sliding glass patio door had been shattered. Several electronic items were missing from the living room. Their clothes and personal papers were strewn across the bedroom floor, and a gray metal box which they kept in a nightstand drawer was laying open on the bed. West and Hoff immediately reported the burglary to the police.

During their investigation, the police found a latent fingerprint on the metal box, which was matched to a known print belonging to a Kenneth R. Taylor. The State filed an infor-

mation against Taylor alleging that he had committed the offenses of burglary, a Class B felony, and theft, a Class D felony. A jury found Taylor guilty of each count.

### *ALTERNATE JUROR INSTRUCTION*

The record reflects that the final instructions which were read to the jury prior to deliberations included the following:

INSTRUCTION *17*

ALTERNATE JURORS [sic] *CHARLES COLBY,* YOU WILL ~~NOT~~ RETIRE WITH THE JURY TO THE JURY ROOM TO DELIBERATE ~~BUT, UNLESS, AND UNTIL, WE EXCUSE A JUROR AND YOU ARE DIRECTED TO SERVE, YOU ARE TO REMAIN IN THE CHARGE OF THE BAILIFF UNTIL THE CONCLUSION OF DELIBERATIONS.~~[1]

R. 58. Taylor did not object at trial to this instruction or tender a competing instruction to the court. Taylor asserts that the trial court's failure to properly instruct the alternate juror regarding his role during deliberations is a fundamental error requiring reversal of his convictions despite his failure to object.

█ Beginning with the case of *Johnson v. State,* Indiana courts have consistently held that an alternate juror may, in the trial court's discretion, retire with the jury for deliberations so long as the alternate is first properly instructed that he is not to participate in the deliberations unless it becomes necessary for him to replace one of the original jurors. 267 Ind. 256, 259–60, 369 N.E.2d 623, 625 (1977), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978). *See also Wilcoxen v. State,* 619 N.E.2d 574 (Ind.1993); *Reichard v. State,* 510 N.E.2d 163 (Ind.1987). Indiana Trial Rule 47(B) also states that "[i]f alternate jurors are permitted to attend de-

---

1. The transcript of the evidence does not include the trial court's reading of the final instructions to the jury. R. 315. This instruction appears, as reproduced herein, as part of the written "Court's Final Instructions to the Jury," which includes a statement, signed by the judge, that the "foregoing final instructions, numbered 12 through 18, were read to the jury at the close of final arguments ... whereupon said final in-

structions are now signed by the judge herein filed and made a part of the record...." R. 51–60. Both parties have reproduced this written instruction in their briefs, and neither party asserts that the stricken portion of the instruction was in fact read to the jury. The record does not disclose when, why, or by whom the stricken language was deleted.

liberations, they shall be instructed not to participate." The instruction given in this case clearly did not contain this admonishment. However, as Taylor concedes, a defendant who fails to object to the trial court's final instructions and fails to tender a competing set of instructions at trial waives any claim of error on appeal unless the error rises to the level of fundamental error. *Sanchez v. State*, 675 N.E.2d 306, 308 (Ind.1996).

■ Fundamental error is error "so prejudicial to the rights of a defendant as to make a fair trial impossible." *Tobias v. State*, 666 N.E.2d 68, 69 (Ind.1996) (quoting *Barany v. State*, 658 N.E.2d 60, 64 (Ind. 1995)). "The mere fact that error occurred and that it was prejudicial will not suffice.... Rather[,] the error must be one such that the defendant could not possibly have had a fair trial or such that [the appellate] court is left with the conviction that the verdict or sentence is clearly wrong or of such dubious validity that justice cannot permit it to stand." *State v. Winters*, 678 N.E.2d 405, 410 (Ind.Ct.App.1997) (quoting *Stewart v. State*, 567 N.E.2d 171, 174 (Ind.Ct. App.1991)). An error in instructing the jury will not amount to fundamental error unless the error is blatant and the harm or potential for harm is substantial and appears clearly on the face of the record. *Sanchez*, 675 N.E.2d at 309.

The potential for harm occasioned by the trial court's erroneous instruction is that Taylor was subjected to a trial by a jury of thirteen members if the alternate participated in the deliberations and verdict. Until relatively recently, it was generally recognized that the right to "trial by jury" guaranteed by the United States Constitution and the Indiana Constitution was the right to a trial by a jury of twelve persons. *See U.S. v. Virginia Erection Corp.*, 335 F.2d 868, 870 (4th Cir.1964) (" '[T]rial by jury' contemplated by [the Constitution] is a trial by a jury of twelve persons, *neither more nor less*.") (emphasis in original); *U.S. v. Kaminski*, 692 F.2d 505, 518 (8th Cir.1982) ("Neither the Constitution nor the [federal] rules contemplate that a case may *ever* be submitted to a jury of more than 12.") (emphasis in original); *Millers Nat'l Ins. Co. v. American*

*State Bank of East Chicago*, 206 Ind. 511, 515–16, 190 N.E. 433, 435 (1934) ("It is well settled that the constitutional requirement is only satisfied by a trial by [a jury of twelve]....").

■ The current view is that nothing in the federal or Indiana constitutions explicitly guarantees a specific number of jurors, and juries of fewer than twelve members have therefore been accepted. *See Williams v. Florida*, 399 U.S. 78, 103, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970) ("[W]e conclude that petitioner's Sixth Amendment rights, as applied to the States through the Fourteenth Amendment, were not violated by ... a six-man rather than a 12–man jury."); *In re Public Laws Nos. 305 and 309*, 263 Ind. 506, 513, 334 N.E.2d 659, 662 (1975) ("We hold that [a provision for six-member juries] is constitutional. Our decision in this regard today represents a change of law in Indiana....").

■ Indiana provides a statutory right to a trial by a jury of twelve persons for a defendant charged with murder or a Class A, B, or C felony. Ind.Code § 35–37–1–1(b)(1). A defendant entitled to a jury of twelve may agree to be tried by a lesser number at any time prior to verdict. Ind.Code § 35–37–1–1(b)(1); *Smith v. State*, 176 Ind.App. 37, 39–41, 373 N.E.2d 1112, 1113 (1978). There are also statutory provisions expressly providing for smaller juries: civil cases are tried to a jury of six members, Ind.Code § 34–1–20.5–1(a), Ind. Trial Rule 47, as are Class D felony and misdemeanor criminal cases. Ind.Code § 35–37–1–1(b)(2).

The State argues that because a defendant can be tried by fewer than twelve jurors, by analogy, he can be tried by more than twelve, and that therefore the failure to instruct the alternate juror not to participate in deliberations does not amount to fundamental error. Although there is ample case law addressing the issue of whether a defendant can be tried by fewer than twelve jurors, *supra*, we can find no comparable cases in which a trial by a jury of more than twelve persons has been addressed. As stated above, our own rules and statutes provide for juries of fewer than twelve members, but not more. However,

although the Supreme Court has held that the "purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members[,]" *Ballew v. Georgia,* 435 U.S. 223, 239, 98 S.Ct. 1029, 1038, 55 L.Ed.2d 234 (1978), it has not yet established a corresponding upper limit on the number of jurors that can constitutionally compose a jury.

 Although there is no constitutional limit to the maximum number of jurors, Taylor was statutorily entitled to a jury of twelve. The record does not and could not reflect whether the alternate did indeed participate in deliberations, and we can therefore do no more than speculate as to the effect of the trial court's erroneous instruction. The instruction was that the alternate "will retire with the jury ... to deliberate...." As Taylor asserts, this could reasonably have been interpreted to instruct the jury that not only was the alternate to join them in the jury room, but also in the process of deliberating. It is also reasonable that the alternate, knowing that he was specifically selected to be an "alternate," did not feel free to join the "regular" jurors in deciding the case. As the State points out, the record does not disclose whether a juror was dismissed or excused during the trial, necessitating the alternate's participation.

 Taylor has not identified any facts which would substantiate the mere possibility that the alternate did in fact participate as a thirteenth juror in deciding the verdict against him; nor has he demonstrated how he would have been substantially harmed by the alternate's participation. The element of harm is not shown by the fact that a defendant was ultimately convicted; rather, it depends upon whether his right to a fair trial was detrimentally affected. *David v. State,* 669 N.E.2d 390, 392 (Ind.1996), *reh'g denied.* The record, when viewed as a whole, does not leave us with the conviction that Taylor could not possibly have had a fair trial with the instruction as given or that the verdict is clearly wrong. Therefore, we find that although the instruction was improper, the error did not rise to the level of fundamental error. As there was no fundamental error,

Taylor's claim regarding the impropriety of the instruction was waived when he failed to object at the time the instruction was given.

### HEARSAY EVIDENCE

Taylor also asserts that the trial court erred in allowing a witness to testify regarding an out-of-court declarant's statements to him and also in admitting an exhibit with the declarant's handwritten statement into evidence, because both the oral and written statements were hearsay, and as such, should have been excluded. The State responds that the testimony was elicited by Taylor himself, and that therefore any error in admission of the hearsay statements was invited by him.

At trial, Taylor intended to call Norman Perryman as a witness to testify that he knew both Taylor and Anthony West, and had arranged a meeting between the two. With this testimony, Taylor intended to establish that he had a legitimate reason to be in West and Hoff's apartment prior to the burglary and to explain the fingerprint found on the metal box. The morning of trial, Detective William Jones served a subpoena on Perryman at the request of the defense. Perryman did not appear for trial.

During cross-examination, Detective Jones was asked by Taylor's counsel what, if anything, he had done to investigate whether Taylor had a legitimate opportunity to be in West and Hoff's apartment, other than talk to the victims. Detective Jones twice indicated that he was not sure he could answer, before being instructed by the court to "[g]o ahead and attempt to [answer]." Detective Jones testified that he had met that morning with Perryman to serve the subpoena and had asked him if he knew a person by the name of Anthony West. Perryman indicated that he did. Detective Jones then ran a computer search for "Anthony West" and showed Perryman an available picture of a person by the name of Anthony West; however, the picture was not of the victim Anthony West. Perryman indicated that the man in the picture was the only Anthony West that he knew. Taylor objected to Detective Jones' testimony regarding Perryman's statements, which objection was overruled.

Perryman also wrote on a computer printout of the picture, "this is the only tony west i know," (punctuation in original) and signed the statement. The picture, which was part of a "Booking Information" printout, was subsequently admitted into evidence over objection by the defense.

We note initially that Detective Jones' testimony regarding Perryman's out-of-court statements was hearsay. Hearsay is defined as an oral or written assertion, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801. It was not argued at trial, nor on this appeal, that the statements were offered for a non-hearsay purpose or that they fell within an exception to the hearsay rule. However, a party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error. *Kingery v. State*, 659 N.E.2d 490, 494 (Ind.1995), *reh'g denied*. Taylor's counsel himself elicited the hearsay testimony. Although counsel subsequently objected to the testimony, Detective Jones simply answered the question posed to him by Taylor's counsel regarding his investigation, and any error in admitting the testimony was therefore invited by the defense.

We note also that although Detective Jones' testimony regarding Perryman's out-of-court statements was hearsay, it coincided with the direct testimony of both West and Hoff that they did not know Taylor or Perryman and that neither man had been in their apartment with their knowledge. R. 117, 122, 126, 135. Admission of hearsay evidence is not reversible error where it is merely cumulative of other evidence properly admitted. *Pruitt v. State*, 622 N.E.2d 469, 474 (Ind.1993).

Affirmed.

SHARPNACK, C.J., and RUCKER, J., concur.