520 S.E.2d 654

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**Eric J. LIGHTNER, Defendant
Below, Appellant.**

No. 25822.

Supreme Court of Appeals of
West Virginia.

Submitted May 5, 1999.

Decided July 12, 1999.

Dissenting Opinion of Justice
McGraw Sept. 24, 1999.

Jodie M. Boylen, Esq., Assistant Prosecuting Attorney, Parkersburg, West Virginia, Attorney for Plaintiff Below, Appellee.

Patrick E. McFarland, Esq., Parkersburg, West Virginia, Attorney for Defendant Below, Appellant.

MAYNARD, Justice:

The Circuit Court of Wood County, West Virginia, failed to dismiss the alternate juror prior to sending the jury to the jury room to begin deliberations in this case. As a result, thirteen people deliberated and voted on the verdict which found the defendant guilty. We agree with the State that this does not constitute reversible error *per se* nor plain error which affects the substantial rights of the defendant. Therefore, we affirm the conviction.

The defendant, Eric Lightner, was accused of sexually abusing his stepchildren. He was indicted on three counts of sexual assault in the first degree in violation of W.Va.Code § 61–8B–3 (1991),[1] one count of sexual abuse

---

1. W.Va.Code § 61–8B–3 (1991) states in perti- nent part:

in the first degree in violation of W.Va.Code § 61–8B–7 (1984) [2] and four counts of sexual abuse by a custodian in violation of W.Va. Code § 61–8D–5 (1991). [3] He was convicted on all eight counts and was sentenced to consecutive terms of imprisonment totaling fifty-six to one hundred seventy years and fined a total of $60,000.00.

During the first day of defendant's trial, voir dire was conducted and a jury was chosen. In open court, without the jury present and prior to striking a jury, the following discourse took place:

THE COURT: Do you have an objection to the 13 deliberating up to the time when they render their verdict, or not?

MS. BOYLEN: I don't have an objection if the 13th person doesn't say anything while they sit in there.

THE COURT: Well, that is a problem.

MS. BOYLEN: Because that way we have to convince one more person .[4]

THE COURT: Yeah. I was just thinking how we could do it, just excuse them before they vote. It would be difficult to do so I guess I will just excuse him before they commence deliberation, and will have to take a chance.

WHEREUPON, counsel proceeded to strike and select a jury.

The case was presented. When closing arguments concluded, the jury retired to commence deliberations at 12:10 p.m. In releasing the jury, the judge stated:

Now, it is 10 after 12:00, into the normal lunch hour. If you wish to go to lunch and then come back and start your deliberations, that is fine. Just let us know when you are leaving and coming back. But before you leave, if you choose to do that, please organize yourselves first by selecting a foreman. Then it is the foreman's duty to be sure that you are all present and accounted for, in the jury room, before you do commence or resume deliberations after being gone.

The jury retired to the jury room at 12:10 p.m. and recessed for lunch at 12:13. The judge failed to release the alternate juror. No objection was made by either side at that time. The jury resumed deliberations at 1:30 p.m. until 2:45 p.m., at which time they returned a verdict. The defendant declined to have the jury polled and all jurors were excused.

Whereupon the following exchange took place between defense counsel and the court:

MR. McFARLAND: Your honor, we would move for a new trial, and we will assign grounds in writing; but one of the bases, that I don't think that the Court excused the alternate. It appeared that the alternate took part in the deliberations.

THE COURT: Well, of course, that is something that the prosecutor complained about, and didn't this time, so I don't see any harm to the Defendant. It required the State, of course, to prove it beyond a

(a) A person is guilty of sexual assault in the first degree when:
(2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less.

2. W.Va.Code § 61–8B–7 (1984) states in pertinent part:
(a) A person is guilty of sexual abuse in the first degree when:
(3) Such person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less.

3. W.Va.Code § 61–8D–5 (1991) states in pertinent part:
(a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custo-

dian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than fifteen years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than five years nor more than fifteen years.

4. The State has withdrawn its objection.

reasonable doubt to 13 jurors instead of 12, and they did. If anything, it increased the burden on the State to prove a guilty verdict.

Okay. On that ground, it is denied. You will have 10 days within which to file your motion with further grounds.

MR. McFARLAND: Yes, sir.

THE COURT: Furthermore, I might mention that the defense did not ask that that be done, or draw it to the attention of the Court, at the time.

MR. McFARLAND: Well, we did at the beginning of trial, Your Honor.

THE COURT: Yes, I understand, but I am talking about when the jury went to deliberate. There was no request that the alternate be excused.

MR. McFARLAND: They just reported back to the jury room without coming back to the courtroom, before they went to deliberations. I thought that the Court was going to instruct the juror, you know, that they were excused at the close of the evidence, what I thought the Court said that the Court was going to do, so I assumed that that was done, and when the jurors reported back to the jury room, without coming into court before the afternoon session.

THE COURT: Well, if it was a mistake, I say it was invited, and it didn't do anything, but hurt the State, if it hurt anybody, because an additional person had to have been convinced, on the jury, of the Defendant's guilt beyond a reasonable doubt.

The defendant made a motion for a new trial on the ground that the alternate juror participated in jury deliberations. In its order entered on April 13, 1998, the court denied the motion. It is from this order the defendant appeals.

On appeal, the defendant originally assigned several errors. This Court granted the appeal solely on the issue of the thirteenth juror. The defendant contends he was denied his constitutionally and statutorily protected right to a fair trial because the alternate juror was allowed to deliberate and vote with the regular jury panel. He urges us to find this amounts to fundamental error which requires reversal *per se*. We decline to do so.

The Sixth Amendment to the United States Constitution states, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law[.]" Article III, Section 14 of the West Virginia Constitution provides in part, "Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men[.]" West Virginia Rules of Criminal Procedure 23(a) and (b) provide that a defendant may waive his or her right to a jury trial and that the parties may stipulate, at any time prior to the verdict being rendered, to any number of jurors less than twelve. W.Va.Code § 56–6–11 (1985) makes essentially the same allowances and provides in pertinent part:

> In any case in which a trial by jury would be otherwise proper, the parties or their counsel, by consent entered of record, may waive the right to have a jury, and thereupon the whole matter of law and fact shall be heard and determined, and judgment given by the court. Absent such waiver, in any civil trial a jury shall consist of six members and in any criminal trial a jury shall consist of twelve members.

West Virginia Rule of Criminal Procedure 24(c) allows alternate jurors to be impaneled and then provides, "An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

The defendant urges us to find that the alternate juror's participation in jury deliberations is so inherently prejudicial that it requires automatic reversal or reversal *per se*. We are not convinced that the trial court's failure to promptly discharge an alternate juror is so serious that it should, in every situation, require automatic reversal. Each case must be decided on its own unique set of facts. Consequently, we agree with the Court of Appeals of Minnesota in that

"we do not believe that 'prejudice per se' is the appropriate rule." *State v. Crandall,* 452 N.W.2d 708, 710–11 (Minn.App.1990). *See United States v. Allison,* 481 F.2d 468 (5th Cir.1973), *cert. denied,* 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974), (court explicitly rejected a rule of *per se* reversal for Rule 24(c) violations). The critical issue before us is whether the circuit court's failure to discharge the alternate juror in violation of West Virginia Rule of Criminal Procedure 24(c) and the alternate's participation in jury deliberations constitute plain error requiring reversal and a new trial.

The United States Supreme Court has said the plain error rule applies when alternate jurors accompany the regular jurors, without objection, to the jury room when deliberations begin. In *U.S. v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the respondents were on trial for their participation in an elaborate loan kickback scheme. All of the parties agreed that fourteen jurors would be selected to hear the case and the two alternates would be identified before deliberations began. At the close of trial, the two alternate jurors were permitted to retire with the jury but were cautioned not to participate in the jury's discussions. When the jury returned the verdict, the respondents were convicted on a number of charges. They subsequently appealed claiming the court violated Federal Rule of Criminal Procedure 24(c).[5] As the respondents did not object to the presence of the alternates in the jury room, the United States Court of Appeals for the Ninth Circuit applied a plain error standard under Rule 52(b).[6] The United States Supreme Court granted certiorari to clarify the standard for plain error review under Rule 52(b). In *U.S. v. Ottersburg,* 76 F.3d 137 (7th Cir.1996), the United States Court of Appeals for the Seventh Circuit explained that in *Olano* "[t]he Court set forth a framework for determining when errors may be corrected even though

they were not brought to the attention of the district court by the defendant."

■■■■ The· defendant in the case at bar contends he objected to the alternate juror joining the regular jury panel during deliberations. After thoroughly reviewing the record, we find no such objection. The State objected when the court initially asked if anyone objected "to the 13 deliberating up to the time they render their verdict[.]" We find no objection from the defendant at that time nor do we find an objection from the defendant when the jury retired to consider the verdict or when the jury returned to the courtroom with a verdict. This Court has said,

Plain error review creates a limited exception to the general forfeiture policy pronounced in Rule 103(a)(1) of the West Virginia Rules of Evidence, in that where a circuit court's error seriously affects the fairness, integrity, and public reputation of the judicial process, an appellate court has the discretion to correct error despite the defendant's failure to object. This salutary and protective device recognizes that in a criminal case, where a defendant's liberty interest is at stake, the rule of forfeiture should bend slightly, if necessary, to prevent a grave injustice.

Syllabus Point 1, *State v. Marple,* 197 W.Va. 47, 475 S.E.2d 47 (1996). We, therefore, hold that when a defendant fails to object to an alternate juror retiring to the jury room with the regular jurors, we will consider the circumstances under the plain error standard of West Virginia Rule of Criminal Procedure 52(b). We expressly overrule and no longer adhere to the rigid standard of *State v. Hudkins,* 35 W.Va. 247, 250, 13 S.E. 367, 367 (1891), which states that when thirteen jurors are impaneled and render a verdict, "the judgment of the circuit court must be reversed and set aside." We will consider this case under the plain error standard.

---

**5.** Federal Rule of Criminal Procedure 24(c) is essentially the same as West Virginia Rule of Criminal Procedure 24(c) and both provide in part that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

**6.** Federal Rule of Criminal Procedure 52(b) is identical to West Virginia Rule of Criminal Procedure 52(b). Both provide that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court ."

■ "In criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *Marple,* 197 W.Va. at 52, 475 S.E.2d at 52. In other words, "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). The *Miller* Court noted this is the definition the United States Supreme Court gave plain error in the seminal case of *United States v. Olano, supra,* and that *Olano* is consistent with cases from this Court. *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129. The United States Supreme Court further explained plain error by stating:

> There must be an "error" that is "plain" and that "affect[s] substantial rights." Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).)

*Olano,* 507 U.S. at 732, 113 S.Ct. at 1776, 123 L.Ed.2d at 518.

■ Under the first principle of *Miller,* we must determine if there was error. "Deviation from a legal rule is 'error' unless the rule has been waived." *Olano,* 507 U.S. at 732–33, 113 S.Ct. at 1777, 123 L.Ed.2d at 518. Waiver is different from forfeiture:

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—

the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Syllabus Point 8, *Miller, supra.* Allowing an alternate juror to deliberate with the jury panel is obviously an error. The West Virginia Constitution, W. Va.Code § 56–6–11 and Rule 23(b) provide that juries shall consist of twelve people. Also, Rule 24(c) states that the alternate shall be discharged after the jury retires to consider its verdict.

We move on to the second requirement. After determining error existed, we must determine if the circuit court's error is plain, which simply means clear or obvious. *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129. There is no way the error described in this case was not clear. The alternate juror, rather than being discharged at the appropriate time, proceeded to the jury room and joined in jury deliberations in contravention of the dictates listed under the first principle. Everyone present watched thirteen, rather than twelve, jurors exit the courtroom, and, later thirteen jurors returned to the courtroom with a verdict.

The third principle requires us to determine whether the alternate juror's participation in deliberations affected the substantial rights of the defendant. "In most cases, as *Olano* makes clear, this requirement means that the error must result in prejudice to the defendant. The defendant bears the burden of persuasion on this issue." *Ottersburg* at 139 (citation omitted). In other words, "[i]t must have affected the outcome of the proceedings in the circuit court." *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129. Unless there is a reasonable possibility that the alternate's participation caused the jury to convict rather than acquit, the convictions will stand. *See U.S. v. Acevedo,* 141 F.3d 1421, 1424 (11th Cir.1998), *cert. denied,* 525 U.S. 1149, 119 S.Ct. 1048, 143 L.Ed.2d 54 (1999). In this case, we do not think it did. At the close of trial, the alternate juror was indistinguishable from the twelve regular jurors. The jury was not present in the court-

room when the jury and alternate were chosen, and the identity of the alternate is not pointed out at any time during the trial.

We also do not believe the alternate juror is a stranger to the proceedings; the alternate is chosen in the same way as a regular juror, is subjected to the same test of impartiality and is required to possess all the qualifications of a regular juror. *See People v. Valles*, 24 Cal.3d 121, 593 P.2d 240, 154 Cal.Rptr. 543 (1979). Alternates harbor no bias toward the prosecution or the defendant. Their exposure to the evidence in the case is exactly the same as that of the regular jurors. Alternates and regular jurors alike are instructed to disregard improper testimony. When the regular jury is sequestered, so are the alternates. Opening arguments, closing arguments and instructions on the law are given to alternates and regular jurors together. "Thus the alternate who accompanies the regular jurors into deliberations has no more and no less information about the case than any other juror, and is no more biased or unduly influenced than any other juror." *Johnson v. Duckworth*, 650 F.2d 122, 125 (7th Cir.1981), *cert. denied*, 454 U.S. 867, 102 S.Ct. 332, 70 L.Ed.2d 169 (1981). We agree with the Supreme Court of California that "[t]here is no more a presumption that the alternate juror would favor conviction than that he would favor acquittal." *Valles*, 24 Cal.3d at 127, 593 P.2d at 243, 154 Cal.Rptr. at 546.

In *Taylor v. State*, 687 N.E.2d 606, 609 (Ind.App.1997), the Court of Appeals of Indiana stated that until recently, it was generally recognized that the right to trial by jury guaranteed by the United States Constitution meant a right to a trial by jury of twelve people. However, the *Taylor* court further stated that the current view is that nothing in the federal Constitution explicitly guarantees a specific number of jurors. Surely twelve is not a magic number. West Virginia Rule of Criminal Procedure 23 provides that a defendant may waive a trial by jury, and if he or she does not waive a jury trial, then the defendant may stipulate that the jury shall consist of a number less than twelve. It could be said that, by analogy, a defendant can be tried by more than twelve.

On this issue, we agree with the reasoning of the Court of Appeals of Wisconsin:

In *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), the Supreme Court upheld the defendant's conviction by a nine-member majority vote of the jury. The Court stated: "Of course, the State's proof could be regarded as more certain if it had convinced all 12 jurors instead of only nine; it would have been even more compelling if it had been required to convince and had, in fact, convinced 24 or 36 jurors." *Id.* at 362, 92 S.Ct. at 1625. In *Ballew v. Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), the Court said, "Statistical studies suggest that the risk of convicting an innocent person ... rises as the size of the jury diminishes." *Id.* at 234, 98 S.Ct. at 1036. In *Brown v. Louisiana*, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980), the Court stated that "a decline in jury size leads to less accurate factfinding and a greater risk of convicting an innocent person." *Id.* at 332, 100 S.Ct. at 2222.

*State v. Ledger*, 175 Wis.2d 116, 126–27, 499 N.W.2d 198, 202–03 (1993). The *Ledger* court further reasoned that the cases cited by the defendant recognized that statutory authority was required to diminish the defendant's constitutional right to a jury trial; therefore, the defendant argued, statutory authority was needed to increase the number of jurors. However, the court said in dicta that allowing a thirteen-member jury was an enlargement of Ledger's right to a jury trial, not a diminution.

We are convinced there is no likelihood that a thirteen-member jury would convict under the facts of this case more readily than would a twelve-member jury. The prosecutor convinced thirteen people the defendant was guilty. Moreover, the defendant had three distinct opportunities to object and chose not to do so each time. He could have objected when the judge initially asked if anyone objected to thirteen jurors deliberating. He said nothing. He could have objected at the close of trial when thirteen jurors filed out of the courtroom to the jury room to begin deliberating. Once again, he said nothing. He could have objected when thir-

teen jurors returned to the courtroom from the jury room with a verdict. Again, he said nothing. The guilty verdicts were received without complaint from the defendant. This was an important juncture in the trial. If the defendant had objected at that time, the trial court could have corrected the error by excusing the alternate juror and sending the jury of twelve back to the jury room with instructions to begin deliberating anew. The defendant also deliberately declined to have the jury polled and the jurors were released. The first time he uttered any complaint was after the jury was discharged. At that time, the opportunity to correct the error was lost to the trial court.

Based on the foregoing, we do not believe the presence of the thirteenth juror affected the outcome of the proceedings. We believe the jury would have found as they did with or without the presence of the alternate juror. The judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

## McGRAW, Justice, dissenting:

### (Filed Sept. 24, 1999)

In clear contrast to the view of the majority of this Court, I view a defendant's right to a jury of twelve as a fundamental constitutional privilege. Indeed, the express directive contained in Article III, § 14 of the West Virginia Constitution, which commands that all criminal trials "shall be by a jury of twelve," leaves room for no other conclusion. Thus, any deviation from this constitutional requirement must be accomplished through a knowing and intelligent waiver.[1]

This Court has consistently adhered to the view that "[c]ertain constitutional rights are so inherently personal and so tied to funda-

mental concepts of justice that their surrender by anyone other than the accused acting voluntarily, knowingly, and intelligently would call into question the fairness of a criminal trial." Syl. pt. 5, *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988). There can be no dispute that a criminal defendant has a fundamental constitutional right to trial by jury, which may only be surrendered by a knowing and intelligent waiver. *See, e.g., State ex rel. Fountain v. King,* 149 W.Va. 511, 513, 142 S.E.2d 59, 60 (1965) ("A person accused of a crime may waive his ... constitutional right to trial by jury, if such waivers are made intelligently and understandingly."). In accord with this position, we long ago recognized in *State v. Hudkins,* 35 W.Va. 247, 13 S.E. 367 (1891), that the right to a jury of twelve is a fundamental right that cannot be forfeited through inadvertence: "Even if the benefit of [Article III, § 14] ... could be waived by a prisoner in a felony case, such waiver would have to appear clearly and affirmatively by the record." 35 W.Va. at 250, 13 S.E. at 367. I see no sound reasoning behind the Court's retreat from this position.

The majority may be correct in its abstract observation that increasing the size of the jury *generally* decreases the odds of a guilty verdict being returned. (Of course, it also logically follows that the likelihood of an acquittal is similarly attenuated.) What is impossible to gauge in individual cases, however, is the impact that the addition of a single juror will have on the outcome of a trial. The Court's conclusion that the insertion of a thirteenth juror invariably benefits the defense presumes that jurors do not exchange thoughts or opinions during their deliberations. Such a premise is obviously flawed, as the cinematic portrayal of deliber-

1. It bears emphasizing that under the unique facts of this case, the Court is dealing with the issue whether a jury composed of thirteen persons constitutes plain error under W. Va. R.Crim. P. 52(b), rather than the propriety of an identified alternate's participation in jury deliberations. Even under the approach taken by the majority, the latter circumstance would clearly warrant reversal. *See People v. Babbington,* 286 Ill.App.3d 724, 222 Ill.Dec. 122, 676 N.E.2d 1326 (1997) (alternate's participation in deliberations, signing of verdict form, and participation in poll-

ing of the jury denied defendant right to fair trial); *United States v.. Ottersburg,* 76 F.3d 137 (7th Cir.1996) (recognizing plain error where alternates deliberated with regular jurors); *see also United States v. Olano,* 507 U.S. 725, 739, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993) (prejudice may arise "either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors") (citations omitted).

ations in *Twelve Angry Men* (United Artists 1957) brings home with considerable force. We simply cannot discount the potential influence that one individual juror might have on the jury as a whole.

Adding a juror beyond the twelve mandated by the West Virginia Constitution is therefore likely to affect the dynamics of a jury just as much as eliminating a juror. In the latter context, Rule 23(b) of the West Virginia Rules of Criminal Procedure mandates that the parties stipulate in writing to a jury of less than twelve—effectively requiring evidence on the record of a defendant's knowing and intelligent waiver of the right to a jury of twelve.[2] It defies logic to require a written waiver in circumstances where the size of the jury is diminished, but to reject such a requirement when it is increased.

I do not necessarily dispute the contention that "the fact that the jury at common law was composed of 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.'" *Williams v. Florida,* 399 U.S. 78, 102–3, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970) (holding that it is constitutionally permissible for a state to use jury of six in criminal cases) (citation omitted). Yet, under the West Virginia Constitution twelve is indeed the "magic number," *see United States v. Virginia Erection Corp.,* 335 F.2d 868, 871 (1964), *abrogated by United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), and this Court should be loath to tinker with such a stable and predictable fixture of our criminal jurisprudence.

For the reasons stated, I respectfully dissent. I am authorized to state that Chief Justice STARCHER joins me in this dissent.

---

**2.** Rule 23(b) is in accord with our holding in *State v. Wyndham,* 80 W.Va. 482, 92 S.E. 687 (1917), where we held that Article III, § 14 precludes a conviction based upon a verdict returned by a jury of less than twelve. Significantly, W. Va. R.Crim. P. 23(b) differs from its federal counterpart, Fed.R.Crim.P. 23(b), to the extent that only the latter allows a valid verdict to be returned by a jury of eleven where a juror has been excused for cause after the jury has retired to consider its verdict.