Justice Stevens,
with whom Justice Souter and Justice Gins burg join, and with whom Justice Breyer joins in part, concurring in part and dissenting in part.
While I join all of the Court’s opinion except Part II-B, I am persuaded that we should also answer the question whether the constitutional error was harmless under the standard announced in Brecht v. Abrahamson, 507 U. S. 619 (1993). The parties and the Solicitor General as amicus curíete fully briefed and argued the question, presumably because it appears to fit within the awkwardly drafted question that we agreed to review.[1] Moreover, our answer to the question whether the error was harmless would emphasize the important point that the Brecht standard, as more fully explained in our opinion in Kotteakos v. United States, 328 U. S. 750 (1946), imposes a significant burden of persuasion on the State.
Both the history of this litigation and the nature of the constitutional error involved provide powerful support for the conclusion that if the jurors had heard the testimony of Pamela Maples, they would at least have had a reasonable doubt concerning petitioner’s guilt. Petitioner was not found guilty until after he had been tried three times. The *123 first trial ended in a mistrial with the jury deadlocked 6 to 6. App. 121. The second trial also resulted in a mistrial due to a deadlocked jury, this time 7 to 5 in favor of conviction. Ibid. In the third trial, after the jurors had been deliberating for 11 days, the foreperson advised the judge that they were split 7 to 5 and “ ‘hopelessly deadlocked.’ ” Id., at 74-75. When the judge instructed the jury to continue its deliberations, the foreperson requested clarification on the definition of “reasonable doubt.” Id., at 75. The jury deliberated for an additional 23 days after that exchange — a total of five weeks — before finally returning a guilty verdict.[2]
It is not surprising that some jurors harbored a reasonable doubt as to petitioner’s guilt weeks into their deliberations. The only person to offer eyewitness testimony, a disinterested truckdriver, described the killer as a man who was 5'7" to 5'8" tall, weighed about 140 pounds, and had a full head of hair. Tr. 4574 (Apr. 26, 1995). Petitioner is 6'2" tall, weighed 300 pounds at the time of the murder, and is bald. Record, Doc. No. 13, Exh. L (arrest report); ibid., Exh. M (petitioner’s driver’s license). Seven different witnesses linked the killings to a man named Anthony Hurtz, some testifying that Hurtz had admitted to them that he was in fact the killer. App. 60-64, 179. Each of those witnesses, unlike the truckdriver, was impeached by evidence of bias, either against Hurtz or for petitioner. Id., at 61-64, 73, 179-180.
However, Pamela Maples, a cousin of Hurtz’s who was in all other respects a disinterested witness, did not testify at *124 either of petitioner’s first two trials. During the third trial, she testified out of the presence of the jury that she had overheard statements by Hurtz that he had committed a double murder strikingly similar to that witnessed by the truck-driver. As the Magistrate Judge found, the exclusion of Maples’ testimony for lack of foundation was clear constitutional error under Chambers v. Mississippi, 410 U. S. 284 (1973), and the State does not argue otherwise.[3] Cf. Skipper v. South Carolina, 476 U. S. 1, 8 (1986) (“The testimony of more disinterested witnesses . . . would quite naturally be given much greater weight by the jury”).
Chambers error is by nature prejudicial. We have said that Chambers “does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence.” United States v. Scheffer, 523 U. S. 303, 316 (1998). Rather, due process considerations hold sway over state evidentiary rules only when the exclusion of evidence “undermine[s] fundamental elements of the defendant’s defense.” Id., at 315. Hence, as a matter of law and logical inference, it is well-nigh impossible for a reviewing court to conclude that such error “did not influence the jury, or had but very slight effect” on its verdict. Kotteakos, 328 U. S., at 764; see also O’Neal v. McAninch, 513 U. S. 432, 445 (1995) (“[W]hen a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief”).
It is difficult to imagine a less appropriate case for an exception to that commonsense proposition. We found in Parker v. Gladden, 385 U. S. 363 (1966) (per curiam), that 26 hours of juror deliberations in a murder trial “indieat[ed] a difference among them as to the guilt of petitioner.” Id., at 365. Here, the jury was deprived of significant evidence of *125 third-party guilt, and still we measure the length of deliberations by weeks, not hours. In light of the jurors’ evident uncertainty, the prospect of rebutting the near-conclusive presumption that the Chambers error did substantial harm vanishes completely.[4]
We have not been shy in emphasizing that federal habeas courts do not lightly find constitutional error. See Carey v. Musladin, 549 U. S. 70 (2006). It follows that when they do find an error, they may not lightly discount its significance. Rather, a harmlessness finding requires “fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.” Kotteakos, 328 U. S., at 765. Given “all that happened” in this case, and given the nature of the error, I cannot agree with the Ninth Circuit’s conclusion that the erroneous exclusion of Maples’ testimony was harmless under that standard.
Accordingly, I would reverse the judgment of the Court of Appeals.

 In Brecht itself the application of the standard of Kotteakos v. United States, 328 U. S. 750 (1946), to the facts of the case was not even arguably encompassed within the question presented. We nonetheless found it appropriate to rule on whether the error was harmless under that standard. See Brecht, 507 U. S., at 638 (“All that remains to be decided is whether petitioner is entitled to relief”).

 According to data compiled by the National Center for State Courts, the average length of jury deliberations for a capital murder trial in California is 12 hours. See Judge and Attorney Survey (California), State of the States — Survey of Jury Improvement Efforts (2007), online at http:// www.ncsconline.org/D_research/cjs/xls/SOSJAData/CA_JA_State.xls (as visited June 8, 2007, and available in Clerk of Court’s case file). Three days before the jury reached a verdict in this noncapital case, the trial judge speculated that it was perhaps the longest deliberation in the history of Solano County. Tr. 5315 (June 5,1995).

 As the Magistrate Judge remarked, “[j]ust how many double execution style homicides involving a female driver shot in the head and a male passenger also shot in a parked car could there be in a community proximate to the victims’ murder herein?” App. 179.

 See United States v. Fields, 483 F. 3d 313, 379 (CA5 2007) (Benavides, J., dissenting from. Part II-A-1 and dissenting in part from the judgment) (“Courts often have been unwilling to find error harmless where the record, as in this case, affirmatively shows that the jurors struggled with their verdict”); Kennedy v. Lockyer, 379 F. 3d 1041, 1056, n. 18 (CA9 2004) (“From the fact that the first trial ended in a mistrial, as well as the fact that the jury deliberated for a considerable amount of time in the second trial, we infer that the question as to [the defendant’s] guilt or innoeence was a close one in both trials”); Powell v. Collins, 332 F. 3d 376, 401 (CA6 2003) (finding prejudicial error in a habeas case.in part because the jury at one point told the court that it was “‘at a stalemate’”); United States v. Varoudakis, 233 F. 3d 113, 127 (CA1 2000) (noting, in weighing harmlessness, that “the jury’s ‘impasse’ note reveals uncertainty about [the defendant’s] guilt”); United States v. Ottersburg, 76 F. 3d 137, 140 (CA7 1996) (“The length of the jury’s deliberations makes clear that this case was not an easy one”); Medina v. Barnes, 71 F. 3d 363, 369 (CA10 1995) (basing prejudice determination in a habeas case in part on the fact that “at one point during their deliberations, the jurors indicated that they might be unable to reach a unanimous verdict”).