**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 11 2012, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GILDA W. CAVINESS**
Caviness Law Office, LLC
Rushville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY D. MADDEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1105-CR-230 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Jack A. Tandy, Judge
Cause No. 73D01-1001-FD-13

**April 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Larry D. Madden ("Madden") appeals his conviction following a jury trial for theft[1] as a Class D felony. On appeal, Madden raises the following issues, which we consolidate and restate as:

I.    Whether the State presented sufficient evidence to support Madden's conviction for theft;

II.   Whether the trial court abused its discretion in denying Madden's tendered jury instructions and in overruling Madden's objection to the jury instruction defining "reasonable doubt"; and

III.  Whether the trial court erred in refusing to declare unconstitutional Indiana Jury Rule 20(a)(8), which allows alternate jurors to discuss the trial evidence with other jurors.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On the afternoon of January 16, 2011, Thomas Williams ("Williams") went to gamble at the Indiana Live! Casino ("Casino") in Shelbyville. That afternoon, Williams won two jackpots at the Casino's dollar slot machines during a ten-minute period. Each jackpot was dispensed in the form of a ticket that could be redeemed for cash at a Casino kiosk. Williams won his first jackpot in the amount of $457 and redeemed his ticket one minute later. *Tr*. at 229-30. Part of Williams's jackpot was dispensed as four one hundred dollar bills. Williams testified that he put "those four one hundred dollar bills in [his] wallet in the regular place for [his] money." *Id*. at 169. Williams then returned to play the dollar slot machines.

---

[1] *See* Ind. Code § 35-43-4-2.

2

Williams won a second jackpot, and while he was cashing out his second jackpot ticket, he noticed that his wallet was missing. Williams began to search for his wallet, but having no luck, he notified the Casino. Williams's report of his missing wallet was relayed by Casino personnel to David Panak ("Panak"), an agent with the Indiana Gaming Commission who was stationed at the Casino. Panak went to the Casino's surveillance station to review video recordings of the area where Williams believed he had lost his wallet. On various "snippets" from the surveillance tape, Panak saw Williams approach an automated payment kiosk, cash out his jackpot ticket, and as he walked away from the kiosk, unknowingly drop his wallet to the Casino floor. *Id*. at 241.

From the next snippet of videotape, Panak could see a man, later identified as Madden, pick up the wallet and go through it. Madden then went to "a slot bank, probably about ten, [fifteen] feet away." *Id*.

> He sits down at the slot bank, appears to go through the wallet. He sets the wallet between two machines, he puts a dollar bill into the machine, cashes out that dollar bill, gets up from the machine and walks away, about maybe five or six steps, hesitates for a second, walks back towards the machine, sits down again, picks up the wallet again, goes through the wallet and then he puts it down [between two slot machines on the end] and he walks off and he walks through the casino.

*Id*. at 243-44.

While Panak was reviewing the surveillance tape, he received a report that Williams's wallet had been found by other Casino patrons and had been turned in by a cocktail server who, cameras revealed, had not opened the wallet. Panak and Casino officials inventoried the wallet, which contained Williams's identification and debit

3

cards, and returned the wallet to Williams. After looking through the wallet, Williams told Casino officials that $400 was missing.

Panak used the surveillance system to determine Madden's identity. Madden, himself, had won $580 but had yet to redeem his ticket. Panak "flagged" Madden's ticket and instructed Casino staff to notify him when Madden attempted to redeem the ticket. *Id.* at 247-48. That night, as Madden attempted to redeem his ticket, Panak approached him, identified himself, and asked Madden if he had found anything at the Casino. Madden asked, "[L]ike what?" *Tr.* at 261. Panak asked Madden if he had found a wallet. Madden admitted that he had, but claimed that he had only looked through the wallet before putting it down where he had found it. Madden denied taking money from the wallet.

Madden was arrested and charged with theft as a Class D felony, false informing as a Class B misdemeanor, and receiving stolen property as a Class D felony. Madden was tried by a jury. At trial, Madden asked the court to declare Indiana Jury Rule 20(a)(8) unconstitutional and tendered his own instruction. The trial court denied Madden's request and refused to give his tendered instruction. Madden tendered additional proposed jury instructions, which the trial court refused to give over Madden's objection. At the close of trial, Madden objected to the trial court's instruction defining "reasonable doubt."

Madden was found guilty of theft and receiving stolen property and not guilty of false informing. At sentencing, the trial court merged the receiving stolen property count into the theft count and sentenced him to one and one-half years in the Department of

4

Correction, of which six months was ordered executed as a direct commitment to house arrest and the balance suspended to probation. The trial court ordered Madden to pay fines and restitution in the amount of $400. *Id.* Madden now appeals. Additional facts will be supplied as needed.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

Madden first challenges the sufficiency of the evidence supporting his theft conviction.[2] When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses and respect the fact-finder's exclusive province to weigh conflicting evidence. *Jackson v. State,* 925 N.E.2d 369, 375 (Ind. 2010). We will affirm a conviction unless, considering only the evidence and reasonable inferences favorable to the verdict, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Stokes v. State*, 922 N.E.2d 758, 763 (Ind. Ct. App. 2010), *trans. denied*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* Instead, the evidence is sufficient if an inference may reasonably be drawn from it to support the jury's verdict. *Id.*

To convict Madden of Class D felony theft, the State was required to prove that he knowingly or intentionally exerted unauthorized control over Williams's wallet and its contents, with the intent to deprive Williams of any part of its value or use. *See* Ind.

---

[2] Madden also contends that there was insufficient evidence to support his conviction for receiving stolen property. During Madden's sentencing hearing, the trial court merged the receiving stolen property conviction into the theft conviction; therefore, we do not address this issue.

5

Code § 35-43-4-2(a). To "exert control over property" means, in pertinent part, to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property. Ind. Code § 35-43-4-1(a). A person's control over property of another person is "unauthorized" if it is exerted without the other person's consent. Ind. Code § 35-43-4-1(b).

The jury heard the following evidence. Williams cashed out his jackpot ticket at a kiosk and placed at least four one hundred dollar bills into his wallet. As Williams walked away from the kiosk, he unknowingly dropped his wallet. *Tr.* at 241, 272. At that moment, a man, later identified as Madden, picked up the wallet without Williams's authorization and looked through it. Madden then walked "with the wallet to a slot bank, probably about ten, [fifteen] feet away. He [sat] down at the slot bank, appear[ed] to go through the wallet." *Id.* at 243. Madden then placed the wallet between two slot machines, put a dollar bill into the slot machine, "cashe[d] out that dollar bill," got up from the machine, and walked away. Tr. at 243. Taking about five or six steps, Madden hesitated for a second, walked back towards the slot machine, sat down, and picked up the wallet. *Id.* at 244. Again, Madden went through the wallet and then placed it between two slot machines on the end of the bank before he walked off through the Casino. A short time later, other patrons of the Casino found the wallet. When the wallet was returned to Williams, four one hundred dollar bills were missing.

On appeal, Madden contends that there was no evidence that he took anything from the wallet or intended to deprive Williams of the property. Instead, he contends that the evidence was enough only to establish suspicion of guilt. We disagree. Madden was

6

charged with knowingly or intentionally exerting unauthorized control over Williams's "wallet &/or $400, with intent to deprive [Williams] of any part of its value or use." *Appellant's App.* at 13. Williams reported that four one-hundred dollar bills were missing from his wallet. It was not necessary that the jury believe Madden stole the $400 to find him guilty of theft. Madden found a wallet that he knew belonged to someone else. He then exerted unauthorized control over the wallet as he carried it to another location in the Casino and placed it between two gaming machines at the end of the slot bank. Madden did not attempt to return the wallet. This was sufficient evidence from which the jury could infer that Madden intended to deprive the owner of the wallet's value or use. Madden's argument is merely an invitation for us to reweigh the evidence, which we may not do. *Donovan v. State*, 937 N.E.2d 1223, 1224 (Ind. Ct. App. 2010), *trans. denied* (2011). The evidence was sufficient to support Madden's conviction for Class D felony theft.

## II. Jury Instructions

Madden next contends that the trial court abused its discretion by denying two of his tendered instructions and by overruling Madden's objection to the jury instruction defining "reasonable doubt." "'The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005) (quoting *Overstreet v. State,* 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied,* 540 U.S. 1150 (2004), *trans. denied* (2006). Our court recently reiterated:

7

"Instructing the jury lies solely within the discretion of the trial court, and we will reverse only upon an abuse of that discretion." A defendant is entitled to have the jury instructed correctly on an essential rule of law. "Generally, we will reverse a trial court for failure to give a tendered instruction if: 1) the instruction is a correct statement of the law; 2) it is supported by the evidence; 3) it does not repeat material adequately covered by other instructions; and 4) the substantial rights of the tendering party would be prejudiced by failure to give it." Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine that the instructions taken as a whole misstate the law or otherwise mislead the jury.

*Fuentes v. State*, 952 N.E.2d 275, 278 (Ind. Ct. App. 2011), *trans. denied* (internal citations omitted).

## A. *Tendered Instructions*

Prior to trial, Madden tendered three instructions that the trial court refused to give over Madden's objection. On appeal, Madden contends that it was an abuse of discretion for the trial court to refuse to give two of his tendered instructions.

### *1.*

Madden's Proposed Final Instruction No. 1 ("Instruction 1") provided:

The Accused is not on trial for any act or conduct not alleged in the Information. If you have any reasonable doubt of the guilt of the accused as charged in, or covered by, the Information, you must acquit him even if you believe from the evidence that he has been shown to be guilty of wrong-doing or of other offenses not charged in or covered by that Information.

*Appellant's App.* at 54.

Madden argues that "[a] defendant may not be found guilty of a crime that is not charged against him," and the exclusion of Instruction 1 may have allowed the jury to convict him of conversion—a crime for which he was not charged. *Appellant's Br.* at 8

8

(quoting *Hobson v. State*, 675 N.E.2d 1090, 1095 n.2 (Ind. 1996)). He maintains that while "there is no dispute that Madden picked Williams'[s] wallet up off of the floor after Williams dropped it, the evidence also supported a finding that Madden had no intent to deprive Williams of his property and therefore, even if guilty of conversion, could not be found guilty of theft or receiving stolen property." *Id*. Madden contends that Instruction 1 should have been given because it was a correct statement of law, the substance of which was not covered by other final instructions given by the court.

We agree that under Indiana law a defendant may not be found guilty of a crime that is not charged against him. *Hobson*, 675 N.E.2d at 1095 n.2. Here, the information charged that "Madden did knowingly or intentionally exert unauthorized control over property of Thomas Williams, to-wit: wallet &/or $400, with intent to deprive Thomas Williams of any part of its value or use . . . . " *Appellant's App.* at 13. Madden was convicted of theft. The jury was not instructed to convict Madden of conversion, nor was Madden convicted of conversion. Here, the evidence did not support the giving of Instruction 1 because Madden was not tried for an act not alleged in the information.

Furthermore, to the extent the instruction had any value in allowing the jury to appreciate Madden's case, Instruction 1 repeated material adequately covered by other instructions, which insisted that the State must prove each element of theft beyond a reasonable doubt. *Tr*. at 349, 353. The instructions taken as a whole did not misstate the law or otherwise mislead the jury. *Schmid v. State,* 804 N.E.2d 174, 182 (Ind. Ct. App. 2004), *trans. denied.* The trial court did not abuse its discretion in refusing to give Instruction 1.

9

*2.*

Madden's Proposed Final Instruction No. 2 ("Instruction 2") provided:

> If the evidence merely tends to establish a suspicion of guilt or the mere opportunity to commit the charged act, it is clearly insufficient to sustain a conviction.

*Appellant's App.* at 55.

Madden contends, "Evidence [that] raises a suspicion of guilt is not sufficient. *Appellant's Br.* at 9 (citing *Mattingly v. State*, 421 N.E.2d 18, 19 (Ind. Ct. App. 1981)). Additionally, he maintains that "[m]ere opportunity to commit a criminal act is not enough to sustain a conviction." *Id.* (citing *McMahel v. State*, 609 N.E.2d 1175, 1178 n.2 (Ind. Ct. App. 1993)). He argues that the "evidence elicited at trial supported giving this instruction as Madden's actions could have fairly been determined to be merely suspicious rather than conclusive of wrong-doing, and the substance of this instruction was not covered by another instruction." *Appellant's Br.* at 9. As such, Madden asserts that the trial court abused its discretion in refusing to give Instruction 2.

Instruction 2 derives from language that appellate courts have used to analyze whether a conviction may be sustained on appeal. *Phillips v. State*, 260 Ind. 321, 326, 295 N.E.2d 592, 594 (1973); *Tibbs v. State*, 255 Ind. 309, 315, 263 N.E.2d 728, 732 (1970). Our court has warned, "the mere fact that certain language or expressions are used in the opinions of Indiana's appellate courts does not make it proper language for instructions to a jury." *Gravens*, 836 N.E.2d at 494 (citing *Ludy v. State,* 784 N.E.2d 459, 462 (Ind. 2003)).

10

Assuming without deciding that Instruction 2 was a proper instruction, other instructions adequately covered that material. Those instructions insisted that the State must prove each element of the offense beyond a reasonable doubt and instructed that if "you think that there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty." *Tr.* at 349, 353. The instructions taken as a whole did not misstate the law or otherwise mislead the jury. *Schmid,* 804 N.E.2d at 182. The trial court did not abuse its discretion in refusing to give Instruction 2.

### B. Reasonable Doubt

Prior to trial, Madden made an objection to the trial court's jury instruction defining "reasonable doubt." *Appellant's App.* at 39-41. Over Madden's objection, the trial court instructed the jury in Final Instruction No. 13 ("Instruction 13") as follows:

> The government has the burden of proving the Defendant guilty beyond a reasonable doubt. Some of you have served as jurors in civil cases, where you were told it was only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be powerful [sic] than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are *firmly convinced that the Defendant is guilty* of the crime charged, you should find him guilty. If one the other hand, you think that there is a *real possibility that he is not guilty*, you must give him the benefit of the doubt and find him not guilty.

*Tr.* at 352-53 (emphasis added). On appeal, Madden contends that the trial court abused its discretion in giving this instruction. He argues that Instruction 13 did not comply with due process because the words "firmly convinced" and "real possibility" may have

11

allowed jurors to find him guilty upon a degree of proof below the reasonable doubt standard as guaranteed by due process. *Appellant's Br.* at 10.

The above argument notwithstanding, Madden recognizes that our Supreme Court in *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind. 1996) endorsed giving the Federal Pattern Criminal Jury Instruction regarding reasonable doubt; an instruction similar to the one above, which includes language of leaving one "firmly convinced" in order to establish guilt beyond a reasonable doubt and finding an accused not guilty when there is a "real possibility" that he is not guilty. *Appellant's Br.* at 9-10. Since *Winegeart*, almost identical instructions have been held "constitutionally sufficient [and] a correct statement of the law . . . ." *Waibel v. State,* 808 N.E.2d 750, 760 (Ind. Ct. App. 2004), *trans. denied* (citing *Winegeart,* 665 N.E.2d at 903); *see Williams v. State*, 724 N.E.2d 1093, 1097 (Ind. 2000) (trial court did not abuse its discretion by giving an instruction virtually identical to one recommended by majority of *Winegeart* Court). The trial court did not abuse its discretion by giving Instruction 13.

### III.    Indiana Jury Rule 20(a)(8)

Madden finally contends that the trial court erred in refusing his request to declare Indiana Jury Rule 20(a)(8) unconstitutional. He further argues that the trial court abused its discretion by failing to give his proposed preliminary instruction and by instead giving Preliminary Instruction Number 1 ("Preliminary Instruction 1"). Preliminary Instruction 1 was modeled after Jury Rule 20(a)(8) and provided as follows:

> Members of the Jury, you have been selected as jurors and have taken an oath to well and truly try this case. When you are in the jury room you may discuss the evidence with your fellow jurors only when all of you are

present so long as you reserve judgment about the outcome of the case until your final deliberations begin.

*Tr*. 140-41.

Indiana Jury Rule 20(a)(8) requires trial courts to include certain information in preliminary instructions, including "that jurors, *including alternates*, are permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence." (Emphasis added). Jury Rule 20 went into effect on January 1, 2003. Subsection (a)(8), however, was not originally included in Jury Rule 20. *Weatherspoon v. State*, 912 N.E.2d 437, 440 (Ind. Ct. App. 2009), *trans. denied.* "Indiana amended Jury Rule 20 on September 30, 2004, to provide that 'jurors [but not alternates] are permitted to discuss the evidence among themselves in the jury room when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence.' Ind. Jury Rule 20(a)(8) (2005)." *Id.* "Subsequently, Jury Rule 20(a)(8) was again amended on September 10, 2007, effective January 1, 2008, to provide that *alternates* are also permitted to discuss the evidence in the jury room during recesses from trial when all are present. *See* J.R. 20(a)(8) (2007) (pre-amended version not specifically mentioning alternates); J.R. 20(a)(8) (2008) (amended version specifically mentioning alternates)." *Id.*

Madden contends that Jury Rule 20(A)(8) is unconstitutional because,

Allowing jurors in a criminal trial to discuss evidence during the trial and, particularly allowing alternates to join in such discussions violates the accused's state and federal constitutional rights to a fair trial and due process. While our Supreme Court has drawn a distinction between

13

"discussing" and "deliberating" this distinction is likely unclear, if even recognized at all by most jurors. This is particularly troublesome since the inclusion of alternates in the "discussion" clearly depends on the jurors not only recognizing and understanding this distinction but also abiding by it.

*Appellant's Br.* at 13.

Our court addressed a similar argument in *Weatherspoon* as follows:

Although alternates' participation in the discussions occur before deliberations commence, Weatherspoon argues that it is the "functional equivalent of expressing an opinion regarding the ultimate outcome," which is expressly forbidden by Jury Rule 20(a)(8). In other words, Weatherspoon claims that alternates *discussing* the case is the same as alternates *deliberating* the case, and alternates in Indiana are not permitted to deliberate. That is, while an alternate juror may retire with the jury for deliberations, the alternate may not participate in the deliberations *unless and until* he or she replaces a juror. If an alternate juror participates in deliberations, a new trial may be granted.

Notwithstanding this line of authority, the Indiana Supreme Court adopted and amended the Jury Rules, including the recent amendment to Jury Rule 20(a)(8), which provides that alternate jurors are permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence. We acknowledge Weatherspoon's argument that during discussions, alternate jurors talk about issues of credibility, highlight and discount certain evidence, and narrow and broaden the issues, all of which may affect the final judgment or verdict, yet these discussions are the very discussions that alternate jurors may not have during deliberations. Nevertheless, our Supreme Court has unambiguously made a distinction between discussions and deliberations. We are not at liberty to rewrite the rules promulgated by our Supreme Court.

As for Weatherspoon's constitutional challenge to Jury Rule 20(a)(8), . . ., there is authority from this Court which provides that "there is no constitutional limit to the *maximum* number of jurors." As for Weatherspoon's statutory entitlement to a jury of twelve, he received just that. Moreover, since our Supreme Court has created a distinction between discussions and deliberations and there is no evidence that any of the alternates deliberated, this argument also fails.

14

*Weatherspoon*, 912 N.E.2d at 440-41 (citations and footnotes omitted). Our court agreed with this reasoning in *Rice v. State*, 916 N.E.2d 962, 966 (Ind. Ct. App. 2009).

In *Rice* and *Weatherspoon,* we noted our Supreme Court's distinction between jury *discussions* and jury *deliberations*. Under Jury Rule 20(a)(8), an alternate juror may be involved in the former but not in the latter. *Rice*, 916 N.E.2d at 966; *Weatherspoon*, 912 N.E.2d at 441; *see Treadway v. State*, 924 N.E.2d 621, 630 n.5 (Ind. 2010) (recognizing that distinction). Madden does not offer any reason for us to conclude that *Rice* and *Weatherspoon* were improperly decided and should not be followed. Here, while it is unclear whether the alternate juror participated in *discussions* with other jurors, it is absolutely clear that he did not participate in *deliberations*. Prior to deliberations, the trial court stated:

> Mr. [], it doesn't appear that we're now gonna need your service any longer as the alternate. Under our rules, you're not allowed to participate in the deliberations or go back into the jury room. You're certainly welcome to stay and await the Jury's verdict if you choose to. If you prefer to go at this point, that would be fine as well and we can talk to you about that, the Bailiff will talk to you about that and we can make arrangements with you. So, I want to thank you for your service here. . . . With that, ladies and gentlemen, you are excused for deliberations.

*Tr*. at 359. Our Supreme Court promulgated Jury Rule 20(a)(8). We are not at liberty to rewrite the rules promulgated by our Supreme Court. *Rice,* 916 N.E.2d at 966; *accord Weatherspoon,* 912 N.E.2d at 441. Madden's state and federal constitutional rights to a fair trial and due process were not violated when the jury was given Preliminary Instruction 1. Likewise, because Jury Rule 20(a)(8) is a correct statement of law and its use properly instructed the jury as to the manner in which the jury could discuss trial

15

issues, the trial court did not abuse its discretion by refusing Madden's tendered instruction, and instead, instructing the jury with Preliminary Instruction 1.

Affirmed.

BARNES, J., and BRADFORD, J., concur.