# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Clayton E. Rogers,**
**Petitioner**

**vs.) No. 19-0612** (Kanawha County 14-P-243)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent**

**FILED**
**November 12, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Clayton E. Rogers ("Petitioner"), by counsel Matthew Victor, appeals the June 10, 2019, order of the Circuit Court of Kanawha County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Holly M. Flanigan and Lara K. Bissett, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review, the parties' arguments, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was convicted of first-degree murder without a recommendation of mercy following a jury trial in February of 2011. This Court affirmed his conviction and sentence in *State v. Rogers*, 231 W. Va. 205, 744 S.E.2d 315 (2013). Prior to discussing Petitioner's habeas petition, we will provide a brief recitation of the factual and procedural history of this matter.

Petitioner was charged with the first-degree murder of his girlfriend, Laura S. Amos ("victim"). During Petitioner's trial, Keith Hubbard testified that on August 28, 2010, he was drinking with Petitioner and the victim under a bridge in St. Albans, West Virginia. Mr. Hubbard stated that Petitioner and the victim argued about another man, Greg Lacy, who had allegedly proposed marriage to the victim. Petitioner was angered by this proposal and, according to Mr. Hubbard, told the victim that he would kill her. Mr. Hubbard and the victim left the area under the bridge and went to Mr. Lacy's home, where they spent the night.

1

The next day, August 29, 2010, Petitioner, Mr. Hubbard, and a third man, Larry Means, were drinking together on the porch of an abandoned house. According to Mr. Hubbard, Petitioner was still angry about Mr. Lacy's proposal to the victim. The victim joined these men on the front porch and the group continued drinking. Mr. Lacy then arrived and walked up to the porch. An argument between Petitioner and Mr. Lacy ensued. Following this argument, Mr. Lacy left. Approximately five minutes later, Petitioner and the victim walked around the corner of the house. Ten or fifteen minutes after Petitioner and the victim walked around the corner of the house, Mr. Hubbard heard the victim scream his name three times. He ran around the side of the house but did not see anybody. Mr. Hubbard returned to the front porch where he and Mr. Means sat for a period of time until another man, Rusty Martin, came by and informed Mr. Hubbard that he was looking for a house to rent. Mr. Hubbard told him that he should look at the house where they had been sitting. According to Mr. Hubbard, he and Mr. Martin started to enter the home and saw the victim lying on the floor in a pool of blood. She had been stabbed twice in the neck.[1] Upon seeing the victim lying on the floor, the men exited the house, and called the police.

The police arrived at the house and began an investigation. One policeman, Officer Don Scurlock of the Nitro Police Department, described what he observed once arriving at the house: "I could see a female lying face up on the floor in the living room . . . I saw a large pool of blood around her head." Officer Scurlock confirmed that the victim was deceased when they arrived at the scene, and that she had suffered knife wounds to her neck.

After interviewing Mr. Hubbard, Mr. Means, and Mr. Martin, the police obtained an arrest warrant for Petitioner, who had fled the scene. Petitioner was found and arrested the following day, August 30, 2010. He was advised of his Miranda rights,[2] signed a waiver of rights form, and then admitted to stabbing the victim on both sides of her neck using two knives. Petitioner told the police where he discarded the knives.[3]

Thereafter, Petitioner was indicted for first-degree murder. His four-day trial commenced in February of 2011. The jury found Petitioner guilty of first-degree murder without a recommendation of mercy. The trial court sentenced Petitioner to life without the possibility of parole.

---

[1] Mr. Hubbard stated that Petitioner had shown him two pocketknives earlier in the day.

[2] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[3] The knives were never found.

Following his conviction, Petitioner filed a direct appeal with this Court, arguing that: 1) his statement to the police was taken in violation of the prompt presentment statute, W. Va. Code § 62-1-5(a)(1) (1997); 2) the trial court erred by denying his trial counsel's motion to withdraw based on a conflict of interest; and 3) the prosecutor made improper remarks during the trial. This Court affirmed Petitioner's conviction finding that: 1) the prompt presentment statute was not violated; 2) the trial court did not err in denying trial counsel's motion to withdraw; and 3) the prosecutor's remarks did not clearly prejudice Petitioner or result in manifest injustice. *See State v. Rogers*, 231 W. Va. 205, 744 S.E.2d 315.

Petitioner, by counsel, filed an amended[4] habeas petition on March 23, 2015. Petitioner's *Losh*[5] list set forth the following grounds for relief: 1) the trial court's jury instruction on the element of malice was erroneous; 2) the trial court's voluntary manslaughter jury instruction was erroneous; 3) the venire overheard confidential bench discussions with individual jurors; 4) the trial court erred in denying Petitioner's motion to suppress, motion for a new trial, and counsel's motion to withdraw; 5) ineffective assistance of trial counsel; 6) ineffective assistance of appellate counsel; and 7) cumulative error. Petitioner also claimed the Court's opinion in his direct appeal should be overturned because the Court "got it wrong" when it rejected the three assignments of error he raised. Finally, he argued that the evidence at trial was insufficient to convict him.

The circuit court ("habeas court") held Petitioner's omnibus evidentiary hearing on April 25, 2018. Petitioner informed the habeas court that he did not wish to testify or present any evidence. Petitioner affirmed that this decision was knowing, intelligent, and voluntary. The habeas court entered its order denying his habeas petition on June 10, 2019. Thereafter, Petitioner filed the instant appeal.

This Court's standard of review is as follows:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

---

[4] Petitioner filed his initial habeas petition and a motion for appointment of counsel on April 5, 2014. The court granted the motion for appointment of counsel, and Petitioner then filed his amended habeas petition.

[5] *See Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). With this standard in mind, we now address the issues presented.

Petitioner appeals the habeas court's order denying his habeas petition. He raises ten assignments of error: 1) the trial court's jury instruction on the element of malice was erroneous; 2) the trial court's jury instruction on voluntary manslaughter was erroneous; 3) the trial court erred by allowing the jury venire to overhear confidential bench questioning of individual jurors; 4) ineffective assistance of trial counsel; 5) ineffective assistance of appellate counsel; 6) the trial court erred in denying his motion to suppress; 7) the trial court erred in denying his trial counsel's motion to withdraw; 8) the trial court erred in denying him a new trial based upon the prosecutor's improper comments; 9) there was insufficient evidence to convict him of first-degree murder; and 10) the cumulative effect of the individual errors deprived him of his due process right to a fair trial. We address each of these assignments of error in turn.

### 1. Malice Instruction

Petitioner first argues that the trial court's jury instruction on the element of malice was erroneous. Malice is an element of first-degree murder.[6] The trial court gave the following instruction on malice:

---

[6] W. Va. Code § 61-2-1 (1991) defines first-degree murder as follows:

Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnaping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four [§§ 60A-4-401 *et seq.*], chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree.

In an indictment for murder and manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every such indictment to charge that the defendant did feloniously, willfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased.

The penalty for first degree murder is "confinement in the penitentiary for life." W. Va. Code § 61-2-2 (1965).

4

Malice is defined as that condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from the acts committed or the words spoken. Malice is not confined to ill will to any one or more particular persons, but is intended to denote an action flowing from any wicked or corrupt motive, done with an evil purpose and wrongful intention where the act has been attended with circumstances showing such a reckless disregard for human life as to necessarily include a formed design against the life of another. Therefore, malice may be inferred from any willful, deliberate and cruel act against another.

Petitioner contends that this instruction was "plainly erroneous" and unconstitutional because the trial court omitted the word "only" from its instruction. However, Petitioner does not state where the word "only" should have been included. Further, Petitioner relies on syllabus point four of *State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994), in which this Court held that "[a]n instruction in a first degree murder case that informs the jury that malice need not be shown on the part of the defendant against the deceased is erroneous." According to Petitioner, the trial court's instruction absolved the State from directing "ill will" at the victim.

The State contends that the trial court's malice instruction was a correct statement of law. It notes that the instruction in the present case is similar to a malice instruction that was challenged and approved of by this Court in *State v. Mullins*, 193 W. Va. 315, 456 S.E.2d 42 (1995). The malice instruction in *Mullins* was as follows:

The word "malice," as used in these instructions, is used in a technical sense. It may either be express or implied, and it includes not only anger, hatred and revenge, but other unjustifiable motives. It may be inferred or implied from you from all of the evidence in this case, if you find such inference is reasonable from the facts and circumstances in this case which have been proven to your satisfaction beyond a reasonable doubt.

It may be inferred from any deliberate and cruel act done by the defendant without any reasonable provocation or excuse, however sudden. Malice is not confined to ill will toward any one or more particular persons, but malice is every evil design in general, and by that is meant that the fact has been attended by such circumstances as are ordinary symptoms of a wicked, depraved and malignant spirit and carry with them

5

the plain indications of a heart, regardless of social duty and fatally bent upon mischief.

193 W. Va. at 322, 456 S.E.2d at 49.

Our review of this issue is guided by *State v. Guthrie*, 194 W. Va. 657, 671, 461 S.E.2d 163, 177 (1995), in which this Court provided that

> instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. The trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to the [trial] court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Upon review, we agree with the State. The malice instruction in the present case was similar to the instruction approved of by this Court in *Mullins*. Moreover, the instruction disapproved of by this Court in *Jenkins* is clearly distinguishable from the instruction in the instant matter. The first sentence of the malice instruction rejected by the Court in *Jenkins* stated "[t]he Court instructs the jury that to convict one of murder, it is not necessary that malice should exist in the heart of the defendant, . . . against the deceased." 191 W. Va. at 91, n. 4, 443 S.E.2d at 248, n. 4. The Court in *Jenkins* concluded that this sentence was an incorrect statement of law, and then explained that

> [t]he rule that malice must be shown against the victim is consistent with our earlier cases, as illustrated by Syllabus Point 5 of *State v. Panetta*, 85 W.Va. 212, 101 S.E. 360 (1919):
>
> > Malice is an essential element of murder either in the first or second degree, and where an intentional homicide by the use of a deadly weapon is admitted, the jury may infer malice, willfulness and deliberation from the act; and *by legal malice is meant not only such as may exist against the deceased*, but it includes such

6

disposition of the accused as shows a heart
regardless of duty and fatally bent on mischief.

191 W. Va. at 92, 443 S.E.2d at 249 (emphasis in original).

As noted by the State, the instruction in the present case "does not in any fashion parallel the erroneous *Jenkins* instruction." Instead, the instruction in the present case is similar to the instruction quoted with favor by the Court in *Jenkins*, i.e., syllabus point five of *Panetta*.

Based on the foregoing, we conclude that the habeas court correctly determined that the malice instruction in the instant case was similar to the instructions approved of by this Court in *Panetta* and *Mullins*. We therefore find that the habeas court did not abuse its discretion by rejecting Petitioner's argument that the malice instruction was erroneous.

### 2. Voluntary Manslaughter Instruction

Petitioner next argues that the trial court's voluntary manslaughter jury instruction was erroneous because it added two elements that should not have been included—"sudden excitement" and "heat of passion." The trial court's voluntary manslaughter instruction provided:

> [t]he essential elements of voluntary manslaughter are that [Petitioner] . . . did intentionally and unlawfully, without malice deliberation or premeditation *but under sudden excitement and heat of passion* killed Laura Amos [the victim]. It is the element of malice which forms the critical distinction between murder and voluntary manslaughter.

(Emphasis added).

Petitioner argues that the trial court erred by including "sudden excitement" and "heat of passion" in this instruction because it made the jury believe that it had to find these elements to render a voluntary manslaughter verdict. He argues that it is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter. *See* Syl. Pt. 3, *State v. McGuire*, 200 W. Va. 823, 490 S.E.2d 912 (1997) ("Gross provocation and heat of passion are not essential elements of voluntary manslaughter, and, therefore, they need not be proven by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter."). Petitioner asserts that if the jury had been properly instructed, it may have found an absence of malice sufficient to acquit him of first- and second-degree murder.

7

This Court recently addressed a similar issue in *State v. Drakes*, — W. Va. —, 844 S.E.2d 110 (2020). In *Drakes*, the Court determined that adding "sudden excitement" and "heat of passion" to the voluntary manslaughter jury instruction was error and, in that case, warranted reversal and remand for a new trial. The Court's discussion of this issue in *Drakes* is as follows:

> The petitioner next argues that the circuit court erred in instructing the jury that it could not convict him of voluntary manslaughter as a lesser included offense of second-degree murder without proof of sudden provocation and heat of passion. The petitioner contends that at the same time the circuit court made it easier for the State to prove second-degree murder, it made it more difficult for the jury to consider voluntary manslaughter by adding the elements of sudden provocation and heat of passion. We agree.
>
> The Court expressly held in syllabus point three of [*State* v.] *McGuire* [200 W. Va. 823, 825, 490 S.E.2d 912, 914 (1997)] that "[g]*ross provocation and heat of passion are not essential elements of voluntary manslaughter*, and, therefore, they need not be proven by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter." 200 W. Va. at 825, 490 S.E.2d at 914, Syl. Pt. 3 (emphasis added). Thus, to the extent that the jury was instructed that voluntary manslaughter required proof that the petitioner killed the victim "unlawfully and intentionally, without premeditation, deliberation, or malice, *but upon sudden provocation and in the heat of passion*[,]" the instruction contained elements that were not essential to a conviction for voluntary manslaughter. (Emphasis added). The error in the instruction given by the circuit court is in direct contravention to the Court's holding in *McGuire*. This instructional error also warrants a reversal and remand for a new trial.

— W. Va. at —, 844 S.E.2d at 119-120 (internal footnote omitted).

Based on the Court's ruling in *Drakes*, we find that the trial court erred by including "sudden excitement" and "heat of passion" in the voluntary manslaughter instruction. However, that is not the end of our inquiry. As the habeas court noted, "[n]o objection was made to this jury instruction, and thus this Court must review this assignment of error under the plain error doctrine." Similarly, in Petitioner's brief to this Court, he

8

asserts that this alleged error "constitutes plain error which vitiated Petitioner's rights to due process and prevented the jury from considering the proper and essential elements of the offense." Because there was no objection to the voluntary manslaughter instruction in the present case, we review it under the plain error doctrine.

In *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995), this Court discussed the plain error doctrine as follows: "because counsel did not ask for an instruction when given the opportunity to do so and did not object to the lack of an instruction, any error by the trial court is foreclosed from appellate review unless it rises to the level of plain error." Additionally, the Court in *Miller* provided that "in West Virginia criminal cases[,] the sole bases for attacking an unobjected to jury charge are plain error and/or ineffective assistance of counsel." 194 W. Va. at 17, n. 23, 459 S.E.2d at 128, n. 23. The Court in *Miller* set forth the four prongs that guide our plain error analysis: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.*, Syl. Pt. 7.[7] In *State v. Lightner*, 205 W. Va. 657, 659, 520 S.E.2d 654, 662 (1999), this Court stated, "[i]n criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."[8] With the foregoing in mind, we proceed to apply the plain error doctrine to this issue.

The first prong of our analysis is whether there was an error. As previously stated, in *Drakes* this Court ruled that the trial court erred by including "sudden excitement" and "heat of passion" in its voluntary manslaughter instruction. Consistent with our ruling in *Drakes*, we find the trial court in the instant matter erred by including "sudden excitement" and "heat of passion" in its voluntary manslaughter instruction.

---

[7] This Court has held that "[a]lleged errors of a constitutional magnitude will generally trigger a review by this Court under the plain error doctrine." *State v. Salmons*, 203 W. Va. 561, 571 n. 13, 509 S.E.2d 842, 852 n. 13 (1998). Similarly, in syllabus point four of *State v. Starr*, 158 W. Va. 905, 216 S.E.2d 242 (1975), this Court provided that "[a]lthough it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution."

[8] We have also stated: "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975). Indeed, an error involving a deprivation of a constitutional right may be regarded as harmless only "if there is no reasonable possibility that the violation contributed to the conviction." Syl. Pt. 20, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

The second prong of *Miller* requires us to determine whether the error was plain. This simply means whether the error was clear or obvious. *Miller*, 194 W. Va. at 18, 459 S.E.2d at 129. As with the first prong, we find that based on our ruling in *Drakes*, which relied on this Court's ruling in a 1997 case, *State v. McGuire*, 200 W. Va. 823, 490 S.E.2d 912, the trial court clearly erred by adding "sudden excitement" and "heat of passion" to the voluntary manslaughter instruction.

We address the third and fourth *Miller* requirements together. Justice Cleckley addressed the third *Miller* prong, providing:

> In determining whether the assigned plain error affected the "substantial rights" of a defendant, the defendant need not establish that in a trial without the error a reasonable jury would have acquitted; rather, the defendant need only demonstrate the jury verdict in his or her case was actually affected by the assigned but unobjected to error.

Syl. Pt. 3, *State v. Marple*, 197 W. Va. 47, 475 S.E.2d 47 (1996). The fourth *Miller* prong, regarding the fairness, integrity, and reputation of judicial proceedings, "requires a case-by-case exercise of discretion." *State v. LaRock*, 196 W. Va. 294, 317, 470 S.E.2d 613, 636 (1996). The Court described our inquiry under the fourth *Miller* prong as follows:

> Once a defendant has established the first three requirements of *Miller*, we have the authority to correct the error, but we are not required to do so unless a fundamental miscarriage of justice has occurred. Otherwise, we will not reverse unless, in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Marple*, 197 W. Va. at 52, 475 S.E.2d at 52 (citations omitted).

We conclude that Petitioner cannot satisfy either the third or fourth prongs of *Miller*. Regarding the third prong—whether Petitioner can demonstrate that the jury verdict in his case was actually affected by the error—we have no problem answering this inquiry in the negative. Likewise, we find the error did not seriously affect the fairness, integrity, or public reputation of these judicial proceedings.

The jury was instructed on first-degree murder, second-degree murder, and voluntary manslaughter. The jury found Petitioner guilty of first-degree murder with a recommendation of no mercy. The overwhelming evidence against Petitioner and the brutal nature of the crime clearly support the jury's imposition of the harshest penalty available. By finding Petitioner guilty of first-degree murder, the jury determined that Petitioner's crime included malice and premeditation. For the jury to find Petitioner guilty

of voluntary manslaughter, it would have to conclude that Petitioner acted without malice and without premeditation. The evidence in this case included Petitioner's admission to having committed the murder. Specifically, Petitioner admitted to "slicing/cutting the victim's throat." *Rogers*, 231 W. Va. at 209, 744 S.E.2d at 319. Additionally, a witness testified that the day before the murder, Petitioner threatened to kill the victim after he found out that another man had proposed to her. This evidence clearly established that Petitioner acted with malice and premeditation.[9] Therefore, we find that while the voluntary manslaughter instruction was erroneous, this error did not actually affect the jury verdict in this case.

Assuming Petitioner could satisfy the third prong of *Miller*, we find that the error in this case did not seriously affect the fairness or integrity of the judicial proceedings. The inclusion of "sudden excitement" and "heat of passion" in the voluntary manslaughter instruction did not result in the jury finding Petitioner guilty of first-degree murder. Rather, the jury arrived at this conclusion based on the overwhelming evidence demonstrating that Petitioner committed this brutal murder with malice and premeditation. Therefore, we conclude that there was not a "fundamental miscarriage of justice" in this case, nor did the error seriously affect the fairness or integrity of the judicial proceedings. Syl. Pt. 3, *Marple*, 197 W.Va. 47, 475 S.E.2d 47. Based on the foregoing, we reject Petitioner's second assignment of error.

### 3. Jury Venire Allegedly Overheard Confidential Bench Questioning

Next, Petitioner argues that he was prejudiced by the trial court's "plain error" in allowing the jury venire to overhear confidential bench questions that were asked of individual jurors. Petitioner's brief provides that "[d]uring the individual questioning of the jury members at the [b]ench, the microphone was not turned off." The alleged conversations that were overheard include one juror discussing her contacts with

---

[9] We find that this case is distinguishable from *Drakes*. In *Drakes*, the jury was not instructed on first-degree murder—there was no evidence of premeditation. However, in the present case, there was clear evidence of premeditation, and the jury relied on this evidence in finding Petitioner guilty of first-degree murder. The jury in *Drakes* was instructed on second-degree murder, voluntary manslaughter, and involuntary manslaughter. During the jury's deliberations in *Drakes*, the jury asked the circuit court to "submit instructions with definitions of Involuntary Manslaughter, Voluntary Manslaughter, and Murder Two." *Drakes*, — W. Va. at —, 844 S.E.2d at 114. The circuit court gave the jury the written instructions it requested. The jury did not make a similar request in the instant case. Finally, we note that while the trial court's voluntary manslaughter instruction in the present case was erroneous, it included the following correct statement of law, "[i]t is the element of malice which forms the critical distinction between murder and voluntary manslaughter." The voluntary manslaughter instruction in *Drakes* did not include a similar statement.

11

Petitioner's brother, and her own domestic violence victimization; another juror discussing the murder of a family member and domestic violence victimization; a third juror noting that her husband had been murdered; a juror who stated that he worked with the prosecutor's father; and a juror discussing her family members who had been murdered. Petitioner argues that a venire infected with stories of murder and domestic violence cannot fairly adjudicate a case regarding murder and domestic violence.

The habeas court rejected this argument. It found Petitioner's claim to be without merit because "the colloquy with the individual venire members was conducted in a discreet manner with 'white noise' used to mute the conversation; thus, that conversation could not be heard by jurors or anyone else in the courtroom." The habeas court determined that the record was devoid of any factual basis that would support Petitioner's claim that the venire heard any questions or answers. We agree with the habeas court's ruling on this issue and find no factual support for Petitioner's argument.

### 4. Ineffective Assistance of Trial Counsel &
### 5. Ineffective Assistance of Appellate Counsel

The next two errors raised by Petitioner are that he received ineffective assistance of counsel during his trial and his direct appeal. Prior to addressing the specific instances Petitioner raises regarding the alleged ineffectiveness of his trial and appellate counsel, we begin with a general review of our ineffective assistance of counsel jurisprudence. This Court has held that

> claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *Miller*, 194 W. Va. 3, 459 S.E.2d 114 (hereinafter "*Strickland/Miller*").

When examining counsel's performance under this standard, we have held:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have

12

acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Miller*, 194 W. Va. 3, 459 S.E.2d 114.

Further, we presume "strongly that counsel's performance was reasonable and adequate." *Id.*, 194 W. Va. at 16, 459 S.E.2d at 127. This Court has stated that petitioners asserting ineffective assistance of counsel claims have "a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Id.* Similarly, this Court is not "interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately." *Id.*

A petitioner asserting a claim of ineffective assistance of counsel must identify the specific "act or omissions" of counsel believed to be "outside the broad range of professionally competent assistance." 194 W. Va. at 17, 459 S.E.2d at 128. The reviewing court is tasked with determining whether, "in light of all the circumstances," but without "engaging in hindsight," that conduct was so objectively unreasonable as to be constitutionally inadequate. *Id.*

Counsel's strategic choices and tactical decisions, with very limited exception, fall outside the scope of this inquiry and cannot form the basis of an ineffective assistance claim. *See State ex. rel. Daniel v. Legursky*, 195 W. Va. 314, 328, 465 S.E.2d 416, 430 (1995). In syllabus point five of *Legursky*, this Court held that

> [i]n deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[10]

Therefore, even if a petitioner can establish that counsel's conduct satisfied the first *Strickland/Miller* prong, such conduct does not constitute ineffective assistance of counsel unless there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *Miller*.

---

[10] This Court has stated that the "[f]ailure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999).

Petitioner argues that both his trial and appellate counsel were ineffective. He asserts five instances in which his trial counsel was ineffective: 1) failing to object to improper jury instructions; 2) failing to address the issue of overheard bench conferences during individual voir dire; 3) failing to remove a crime victim from the jury; 4) failing to properly cross-examine two State witnesses; and 5) withdrawing a request for a bifurcated trial. We consider each of these claims individually.

First, Petitioner asserts that his trial counsel was ineffective by failing to object to the malice and voluntary manslaughter jury instructions. He asserts that if the jury had been properly instructed, it might have returned a verdict of voluntary manslaughter or second-degree murder. We disagree and find Petitioner cannot satisfy both *Strickland/Miller* prongs on this issue.

As previously discussed, we agree with the habeas court's conclusion that the malice instruction was a correct statement of law. Therefore, Petitioner cannot satisfy the first *Strickland/Miller* prong—whether counsel's performance was deficient under an objective standard of reasonableness—for failing to object to an instruction that correctly set forth our law on malice.

Regarding the voluntary manslaughter instruction, we find that Petitioner cannot satisfy the second *Strickland/Miller* prong. We need not restate our entire analysis on the voluntary manslaughter instruction. Briefly, we found it was erroneous for this instruction to include "sudden excitement" and "heat of passion." However, for Petitioner to prevail on his ineffective assistance claim, he would need to demonstrate that there is a reasonable probability that had his trial counsel objected to this instruction, the result of the proceedings would have been different. As previously stated, we find that it was not the erroneous voluntary manslaughter instruction that resulted in the jury finding Petitioner guilty of first-degree murder. Rather, the overwhelming evidence demonstrating that Petitioner committed the brutal murder with malice and premeditation resulted in the jury finding him guilty of first-degree murder without a recommendation of mercy. Petitioner's trial counsel's failure to object to the voluntary manslaughter instruction had no bearing on the clear evidence demonstrating that Petitioner acted with malice and premeditation. Therefore, we find that Petitioner's ineffective assistance of counsel claim regarding the voluntary manslaughter instruction fails under the second *Strickland/Miller* prong.

Next, Petitioner asserts that his trial counsel was ineffective because he did not seek a curative instruction regarding the venire overhearing bench conferences with individual jurors. We find no factual support for Petitioner's argument that the venire overheard any bench conferences. Therefore, we agree with the habeas court's ruling rejecting this argument.

14

The third instance Petitioner cites is counsel's failure to move to strike a juror for cause. This juror, Ms. Kinnon-Brown, revealed during voir dire that her husband had been murdered, and that she was dissatisfied with the murderer's sentence. Petitioner acknowledges that this juror said she could assess the evidence in the instant case fairly, but argues counsel's decision not to strike her "defies belief as to any justification, [and] cannot be explained in terms of trial strategy[.]"

The habeas court reviewed this issue and found that the juror

did not simply state she could be fair. She stated she had been friends with [her husband's] killer and his family. She stated unequivocally that she had an open mind, her personal experience would not cloud her judgment, and that she would listen to the evidence. She did not harbor ill feeling—in fact, she said she didn't care that the criminal case turned out the way it did. She had no positive or negative feelings toward the prosecution. Two more times, she stated that her personal experience would not affect her ability to weigh the evidence or the way she viewed the case.

Based on the foregoing, the habeas court found that counsel was not ineffective for failing strike this juror. Additionally, the habeas court found that Petitioner's trial counsel had reason to be more concerned about other members of the venire.[11] The habeas court determined that Petitioner showed no prejudice resulted from trial counsel's failure to strike this juror. It therefore concluded that Petitioner could not satisfy either *Strickland/Miller* prong on this issue.

After review, we agree with the habeas court's ruling. Petitioner has not demonstrated that he can satisfy either *Strickland/Miller* prong on this issue. In fact, Petitioner has not asserted any argument explaining how this alleged error could satisfy the second prong of *Strickland/Miller*. This Court has stated that the purpose of voir dire is to obtain a panel of jurors free from bias or prejudice. *State v. Peacher*, 167 W. Va. 540, 552, 280 S.E.2d 559, 569 (1981). "The true test to be applied with regard to the qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had." *State v. Charlot*, 157 W. Va. 994, 1000, 206 S.E.2d 908, 912 (1974). The complained of juror, Ms. Kinnon-Brown, stated repeatedly that her personal experience would not affect

---

[11] For instance, seven other members of the venire said they favored the death penalty, and one member "thought" she could recommend mercy, suggesting that she might not recommend mercy. Another venire member had a close connection to a murder case and had been in an abusive relationship.

15

her ability to weigh the evidence in this case. Based on the foregoing, we agree with the habeas court's ruling on this issue.

Next, Petitioner argues that his trial counsel was ineffective during his cross-examination of two State witnesses, Robert Wilcox and Mr. Hubbard. Petitioner asserts that his trial counsel was ineffective because he failed to cross-examine Mr. Wilcox about his claim that he had seen a cut on Petitioner's hand shortly after the murder. Petitioner contends that this testimony would have demonstrated Petitioner was so intoxicated that he did not realize he cut himself when he stabbed the victim. This would have bolstered Petitioner's effort to disprove premeditation or deliberation.

Petitioner also argues that his trial counsel's cross-examination of Mr. Hubbard was ineffective. Petitioner only devotes three sentences of his brief to this issue, asserting that counsel failed to cross-examine Mr. Hubbard "on impeachable felonies, specifically credit card fraud, possession of a stolen vehicle (two convictions) and burglary." There is no argument explaining how this alleged deficiency satisfies either prong of *Strickland/Miller*.

The habeas court rejected both of these arguments. It ruled that it was reasonable for trial counsel to refrain from eliciting information from Mr. Wilcox about the cut because "[s]obriety or lack thereof is not demonstrated by a cut on the hand" and "[a]n accidentally inflicted injury—a cut—is not limited to those who have been drinking." The habeas court found that "[t]he jury heard that the [P]etitioner had been drinking, heavily, the day he killed [the victim.]" Thus, the habeas court found that the impact of any testimony regarding the cut on Petitioner's hand was negligible because it would not have convinced a jury of Petitioner's voluntary intoxication or made his voluntary intoxication defense more believable. Further, the habeas court noted that Mr. Wilcox testified that Petitioner "had a buzz, he was lit." Additionally, Mr. Wilcox told the police, and the jury was informed, that Mr. Wilcox observed that Petitioner was acting weird, and had been drinking or taking pills. As the habeas court found, "the critical information— that [P]etitioner was intoxicated—was before the jury."

Likewise, the habeas court found that the complained of information not elicited by counsel about Mr. Hubbard—his prior criminal convictions—"was before the jury and any additional questions would have been merely cumulative." Because this information was already before the jury, the habeas court ruled that "[t]he decision not to rehash the criminal convictions by further cross-examination was not objectively deficient . . . the [P]etitioner does not even suggest how the failure to cross-examine Hubbard in greater detail affected the result of the proceedings."

Upon review, we agree with the habeas court's ruling. This Court has recognized that

16

[t]he extent of cross-examination is within the trial counsel's discretion. "The method and scope of cross-examination is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel." *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 328, 465 S.E.2d 416, 430 (1995) (citations omitted).

*Coleman v. Painter*, 215 W. Va. 592, 596, 600 S.E.2d 304, 308 (2004).

Petitioner cannot satisfy either prong of *Strickland/Miller* in his argument regarding trial counsel's cross-examination of Mr. Wilcox and Mr. Hubbard. The information Petitioner asserts should have been elicited from these two witnesses was before the jury. Counsel's strategic decision not to delve into areas that had already been explored falls well short of satisfying the first prong of *Strickland/Miller*. Further, Petitioner's brief to this Court does not explain how these alleged errors could satisfy the second *Strickland/Miller* prong. Therefore, we agree with the habeas court's ruling on this issue and reject Petitioner's argument.

The final ineffective assistance of trial counsel claim asserted by Petitioner is that his counsel was ineffective by withdrawing the motion for a bifurcated trial. Petitioner argues that this deprived him of his right to: 1) present mitigating evidence and evidence of his future dangerousness; 2) allocution; 3) participate in a presentence investigation report; and 4) present witnesses and other mitigating evidence.[12] Petitioner suggests counsel's decision to withdraw the bifurcation motion left the jury without sufficient information about him including his "successful employment, good relations with others, and an apparent dose of remorsefulness."

The habeas court found that counsel's decision to proceed with a unitary trial was a sound strategy. It noted that

[b]ifurcation goes two ways. While there might exist evidence that the [P]etitioner would have wanted the jury to hear that was not admissible during the guilt phase, . . . [t]he State, however, definitely would have had evidence that it could have

---

[12] Petitioner also argued in this portion of his brief that the trial court erred in failing to give the jury an "instruction delineating the role of any mitigating factors to be considered in reaching the sentencing decision." As noted by the State, this argument fails because it regards the trial court, and not trial counsel, and therefore falls outside the purview of *Strickland/Miller*. Moreover, this Court has expressly prohibited such an instruction because "the recommendation of mercy in a first degree murder case lies solely in the discretion of the jury." *State v. Triplett*, 187 W. Va. 760, 769, 421 S.E.2d 511, 520 (1992).

presented in the mercy phase, including, but not necessarily limited to information obtained from the criminal records . . . that [P]etitioner had at least two previous criminal convictions . . . [and] a 2003 arrest for forgery; an arrest for malicious wounding; two instances of violating a domestic violence protective order and a conviction for aggravated robbery.

. . . .

This Court believes the jury made its decision about mercy based upon the brutal and senseless murder of a defenseless, intoxicated victim who had her throat cut by not one but two knives. Not bifurcating the trial had no impact upon the jury's decision regarding mercy. In fact, the [S]tate had negative information about the [P]etitioner that the jury did not hear, and would have heard in a bifurcated trial.

After review, we agree with the habeas court's ruling. Withdrawing the bifurcation motion was a strategic decision that prevented Petitioner's prior criminal history from being considered by the jury. Also, by withdrawing the motion, the victim's family would not be able to testify about the grief they suffered because of the brutal murder. Petitioner's argument in favor of bifurcation—that it would have provided him with the chance to inform the jury about his "successful employment, good relations with others, and an apparent dose of remorsefulness"—is not persuasive.

This Court has held that "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974). Similarly, this Court has stated that "[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Legursky*, 195 W. Va. at 329, 465 S.E.2d. at 430 (internal citation and quotation omitted).

Based on all of the foregoing, we find that counsel's decision to withdraw the bifurcation motion was not deficient under an objective standard of reasonableness. Therefore, Petitioner's argument on this issue cannot satisfy the first prong of *Strickland/Miller*.

Petitioner's next assignment of error is that his appellate counsel was ineffective. In his brief to this Court, Petitioner only devotes two sentences to this argument, asserting that appellate counsel was ineffective "due to the failure . . . to argue

or raise on appeal improper jury instructions and failure to argue . . . the trial court's plain error of infecting the jury venire with overheard bench conferences." The State notes that these claims are identical to the claims Petitioner raised under his ineffective assistance of trial counsel assignment of error. For that reason, and because Petitioner did not include any factual or legal analysis regarding how these errors satisfy either prong of *Strickland/Miller*, the State argues that this assignment of error should be rejected. We agree.

Our analysis rejecting Petitioner's ineffective assistance of trial counsel claim regarding the jury instructions, and the allegation that the venire overheard bench questioning applies to this assignment of error as well. Further, as noted by the State, Petitioner fails to address how either of these errors satisfies *Strickland/Miller*. Based on the foregoing, we reject Petitioner's argument that his appellate counsel was ineffective.

**6. Denial of the Motion to Suppress**
**7. Denial of Trial Counsel's Motion to Withdraw**
**8. Prosecutor's Improper Comments**

We consider the next three assignments of error together. Petitioner asserts that the trial court erred in determining that his statement to the police was not taken in violation of the prompt presentment statute; that his trial counsel should have been allowed to withdraw due to a conflict of interest; and that the prosecutor made improper comments during his trial. These three assignments of error were raised in Petitioner's direct appeal, and were fully addressed and rejected by this Court in *State v. Rogers*, 231 W. Va. 205, 744 S.E.2d 315. Because the Court already ruled on these three issues, the habeas court provided that Petitioner "is requesting this Court overrule the West Virginia Supreme Court (and its own rulings at trial). This is something the Court cannot and will not do." We agree with the habeas court's ruling rejecting these three assignments of error.

This Court has recognized that "[t]he general rule is that when a question has been definitely determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960). This Court has also explained that

> [t]he law of the case doctrine "generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, *provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal*." 5 Am.Jur.2d Appellate Review § 605 at 300 (1995) (footnotes omitted). "[T]he doctrine is a salutary rule of policy and practice, grounded in important

19

considerations related to stability in the decision making process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir.1991).

*State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003) (emphasis added). Further, "[the] law of the case rule is not confined to civil cases, but applies also to rulings made by appellate courts in criminal cases." *Hatfield v. Painter*, 222 W. Va. 622, 632, 671 S.E.2d 453, 463 (2008) (internal citation omitted).

Petitioner has not asserted any material change in the facts since this Court addressed these three arguments in his direct appeal. Therefore, we conclude that the law of the case doctrine applies, and that Petitioner is entitled to no relief on these three assignments of error.

## 9. Insufficient Evidence

Petitioner briefly asserts that there was insufficient evidence to convict him of first-degree murder because of his "heavy inebriation." He argues that because he was inebriated, "the elements of premeditation and deliberation were not sufficiently proven[.]" The State asserts that the habeas court correctly noted that Petitioner waived any challenge to the sufficiency of the evidence by failing to raise that issue on direct appeal. We agree.

This Court has held that "except in extraordinary circumstances, on a petition for habeas corpus, an appellate court is not entitled to review the sufficiency of the evidence." *Cannellas v. McKenzie*, 160 W. Va. 431, 436, 236 S.E.2d 327, 331 (1977); *see Edwards v. Leverette*, 163 W. Va. 571, 576, 258 S.E.2d 436, 439 (1979) (explaining that habeas corpus proceedings are markedly different from direct appeals because habeas corpus review is limited to constitutional error). Assuming this issue was ripe for review, we would characterize the evidence supporting the jury's verdict as overwhelming. Based on the foregoing, we agree with the habeas court's ruling rejecting Petitioner's sufficiency of the evidence argument.

## 10. Cumulative Error

Petitioner's final assignment of error is that the cumulative effect "of numerous errors cited herein rises to the level requiring reversal" of his conviction. Our standard for reviewing a cumulative error argument was set forth in syllabus point five of *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972): "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." This Court has recognized that the cumulative error doctrine "should be used sparingly" and only where

the errors are apparent from the record. *Tennant v. Marion Health Care Foundation, Inc.,* 194 W. Va. 97, 118, 459 S.E.2d 374, 395 (1995).

Our review of this matter has revealed one error—the inclusion of "sudden excitement" and "heat of passion" in the voluntary manslaughter instruction. As explained, we determined that this error did not affect the verdict in this case, nor did it seriously affect the fairness, integrity, or public reputation of these proceedings. This lone error is not sufficient to grant Petitioner relief on his cumulative error argument. We therefore reject Petitioner's final assignment of error.

For the foregoing reasons, we affirm the habeas court's June 10, 2019, order.

Affirmed.

ISSUED: November 12, 2020

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

21